UNITED STATES DISTRICT COURT
DISTRICT OF NEBRASKA

| | |
|---|---|
| SHANE HARRINGTON, H & S CLUB OMAHA, INC., MELTECH, INC., and MIDWEST GIRLS CLUB, | Case No.: |
| Plaintiffs, | |
| - versus - | |
| SUSAN STRONG, PETE RICKETTS, THERESA THIBODEAU, PATTY BROOKS, DOUG PETERSON, HOBERT RUPE, ROBERT BATT, JOHN BOLDUC, BRENDA KONFRST, and JOHN AND JANE DOE NEBRASKA STATE PATROL OFFICERS #1 – #800, In Their Individual Capacities and Official Capacities as Employees of the State of Nebraska and THE CITY OF OMAHA NEBRASKA, JEAN STOTHERT, TODD SCHMADERER, KEN KANGER, MICHELE BANG, COLENE HINCHY, PAUL KRATZ, AIMEE MELTON, CHRIS JERRAM, JOHN DOE BUILDING INSPECTORS #1 AND #2, JOHN DOE OMAHA POLICE OFFICERS #1 - #10, and JOHN AND JANE DOE OMAHA POLICE OFFICERS #1 - #900, In Their Individual Capacities and Official Capacities as Employees of the City of Omaha Nebraska, | COMPLAINT |
| Defendants. | JURY DEMANDED |

Plaintiffs submit the following Complaint against the Defendants:

## INTRODUCTION

1.      Plaintiffs respectfully request that this Court grant Plaintiffs permission to resume protesting, picketing and assembling publicly in the City of Omaha and that this Court declare unconstitutional and enjoin enforcement of:  (1) Section 20-112 of the Omaha City Ordinance regarding Lewd Conduct, (2) L.B. 1120[1], known as the "Bottle Club Bill", (3) the City of

---

[1] *Laws of Nebraska 105th Leg 2d Session*

Omaha's Bottle Club Ordinance to be enacted on or about August 15, 2018, (amending sections 15-2, 15-9, 15-15, 15-22, 15-33, 15-34, 15-40, 15-41, 15-42, 15-44, 15-53, and 15-54 of the Omaha Municipal Code), (4) the Omaha Good Neighbor Nuisance Ordinance, and (5) Judge Susan Strong's Lancaster District Court opinion/court order of July 18, 2019, against Club Omaha because: (a) Club Omaha is not a Bottle Club; (b) Defendants gave Plaintiffs written permission to open and operate Club Omaha in 2016/2017 prior to Plaintiffs entering their current lease at 7301 Farnam Street, Omaha, Nebraska, which expires March 2020, and (c) because the Lewd Conduct Ordinance, Good Neighbor Nuisance Ordinance, and Bottle Club Laws are overbroad, vague and unconstitutional.

2.     Additionally, Plaintiffs respectfully request that this Court enjoin Defendants and their servants, agents, and employees from entering Plaintiffs' private property located at 7301 Farnam Street without a warrant, including but not limited to the parking lot and building, and that Defendants be enjoined from attempting to harass, intimidate, threaten, and retaliate against Plaintiffs for exercising their rights to free speech, expression, and assembly.

3.     Defendants individually, and by their servants, agents, and employees have engaged and continue to engage in intentional discrimination of Plaintiffs due to the nature of speech, expression, and assembly at Plaintiff's private gentlemen's club that features live nude dancing, Plaintiffs' association with the adult entertainment industry, and due to the fact that Plaintiffs' members, employees, and contractors consist of a high percentage of African-Americans, Latinos, Asians, (and other non-white members), females, as well as a high percentage of individuals who are members of the LGBT community.

**PLAINTIFFS WERE GIVEN PERMISSION TO OPEN AND OPERATE CLUB OMAHA**

4.     The following emails from January 30, 2017, October 31, 2016, and October 25, 2017

2

between Plaintiffs' counsel and the City of Omaha, by way of Defendants Kratz and Acosta-

Trejo, prove that Defendants gave Plaintiffs prior written consent to open and operate Club

Omaha, including their conclusion that, "no license is required under state law or any city

ordinances.":

Mr. Spencer,

    You are correct, there are no zoning regulations in Omaha in regards to "sexually oriented
business" as you put it. However, there are prohibitions in Chapter 15 of the Omaha Code related
to nude entertainment, wet t shirts, and the use of stripper poles. There might also be some Ne-
braska case law on similar issues but I dont have the citations handy.

**William Acosta-Trejo**
**Assistant City Attorney**
**City of Omaha - Law Department**
**1819 Farnam Street, Suite 804**
**Omaha, NE  68183**
**Telephone:  (402) 444-5115**
**Facsimile:  (402) 444-5125**
**E-Mail:** william.acosta-trejo@cityofomaha.org

On Mon, Jan 30, 2017 at 2:07 PM, <evan@evanspenceresq.com> wrote:
Dear Mr. Kratz and Mr. Acosta-Trejo:

Thank you for your response below regarding my bottle club inquiry.  I just have one additional
question.

Does the City of Omaha have a sexually oriented business statute?  I read through all the Omaha
zoning laws and didn't see anything.

Evan Spencer
Attorney at Law
Tel. 917.547.4665
305 Broadway, 7th Floor
New York, NY   10007
Evan@EvanSpencerEsq.com
www.EvanSpencerEsq.com
-------- Original Message --------
Subject: Fwd: Bottle Club in Omaha
From: "Paul Kratz (Law)" <paul.kratz@cityofomaha.org>
Date: Mon, October 31, 2016 1:18 pm
To: evan@evanspenceresq.com

See below.  I hope this answers your question.

3

Paul D. Kratz
Omaha City Attorney
1819 Farnam Street, Suite 804
Omaha, Nebraska 68183
402-444-5115
paul.kratz@cityofomaha.org

---------- Forwarded message ----------
From: **William J. Acosta-Trejo (Law)** <william.acosta-trejo@cityofomaha.org>
Date: Mon, Oct 31, 2016 at 9:26 AM
Subject: Re: Bottle Club in Omaha
To: "Paul Kratz (Law)" <paul.kratz@cityofomaha.org>

Omaha doesn't have anything that's named a "bottle club".  He simply describes a private club
that's not open to the public.  I assume that's members-only where the members bring their own
alcohol in.  Omaha just follows state law, which says you don't need a license to provide alcohol
to your "guests" or to yourself.  So if members bought alcohol, took the alcohol to the club,
stored it at the club, and only provided it to themselves and their guests (people who have not
paid them for the drinks) and the club doesn't provide the alcohol in exchange for getting paid,
then I think state law allows this without a license.  There's no need for an ordinance or anything
local authorizing it.

A license is needed if it's a place open to the general public or the club provides alcohol in ex-
change for payment.  If the payment (dues) are just for use of the premises, food, etc., and not for
access to alcohol, then no license is required under state law or any city ordinances.

**William Acosta-Trejo**
**Assistant City Attorney**
**City of Omaha - Law Department**
**1819 Farnam Street, Suite 804**
**Omaha, NE  68183**
**Telephone:  (402) 444-5115**
**Facsimile:  (402) 444-5125**
**E-Mail:** william.acosta-trejo@cityofomaha.org

On Tue, Oct 25, 2016 at 3:58 PM, Paul Kratz (Law) <paul.kratz@cityofomaha.org> wrote:
Please research and let me know your answer.

Paul D. Kratz
Omaha City Attorney
1819 Farnam Street, Suite 804
Omaha, Nebraska 68183
402-444-5115
paul.kratz@cityofomaha.org

4

---------- Forwarded message ----------
From: <evan@evanspenceresq.com>
Date: Tue, Oct 25, 2016 at 3:54 PM
Subject: Bottle Club in Omaha
To: paul.kratz@cityofomaha.org

Dear Mr. Kratz:

I am writing to inquire as to whether or not the City of Omaha would permit a bottle club closed to the public for private events without a liquor license that complies with the Nebraska State liquor law.  Such clubs are permitted in the cities of Grand Island and Hastings but prohibited in the City of Lincoln.  There appears to be nothing in the Omaha City Code that prohibits such a club.

Please let me know at your earliest convenience.

Evan Spencer
Tel. 917.547.4665
305 Broadway, 7th Floor
New York, NY   10007
Evan@EvanSpencerEsq.com
www.EvanSpencerEsq.com

5.      After passing building inspections Club Omaha opened on March 24, 2017, as a private

membership club featuring nude dancing and live DJs from 6:00 pm – 5:00 am daily.

**OMAHA'S GOOD NEIGHBOR ORDINANE IS OVERBROAD AND VAGUE**

6.      Shortly after opening, the City of Omaha passed a Good Neighbor Nuisance Ordinance

directed at Club Omaha (by amending Chapter 18 of the Omaha Municipal Code).

7.      This Nuisance Ordinance not only made Plaintiffs subject to the same laws as bars with

liquor licenses, it also included a provision stating that it's a "Nuisance" if Plaintiffs: "(F)ail to

comply with all provisions of local, state, and federal laws, regulations or orders, as well as any

condition imposed on any permits issued pursuant to applicable laws, regulations or orders,

including payment of any City business taxes and fees."

8.      In other words, if Plaintiffs violate any of thousands of local, state, and federal laws, the

City of Omaha can revoke Plaintiffs' certificate of occupancy and force Plaintiffs' business Club

Omaha to close under the guise that they had caused a "Nuisance."

9.      However, since Plaintiffs always follow the law and were not ticketed or even warned for violation of the Omaha City Nuisance Ordinance, Defendants resorted to additional unconstitutional measures to persecute, discriminate, and damage Plaintiffs.

### THE BOTTLE CLUB LAWS DO NOT APPLY TO CLUB OMAHA

10.     Thereafter, the State of Nebraska enacted The Bottle Club Bill L.B. 1120 which went into effect on July 19, 2018 and the City of Omaha enacted a Bottle Club Ordinance which will take effect on or about August 15, 2018.

11.     Section 3 of the Bottle Club Bill, codified as Neb. Rev. Stat. § 53-103.47, defines a Bottle Club as:

> Bottle club means an operation whether formally organized as a club with a membership list or not, keeping or maintaining premises where persons who have made their own purchases of alcohol liquor congregate for *"the express purpose of"* consuming alcoholic liquor upon payment of a fee or other consideration. (emphasis added)

12.     While the Bottle Club Laws were illegally and specifically designed to retaliate against and harm Plaintiffs and shut down Club Omaha, under their plain and express language, the Bottle Club Laws do not apply to Plaintiffs because Club Omaha is not a Bottle Club.

13.     The Defendants were in such a rush to put Plaintiffs out of business that they failed to pass laws that actually encompassed Plaintiffs' private membership clubs.

### DEFENDANT STRONG'S OPINION OF JULY 18, 2018 IS UNCONSTITUTIONAL

14.     To make all this unconstitutional and illegal nonsense stick, Defendant Susan Strong, a Lancaster District Judge, redefined the English language for purposes of her opinion to reach the decision and issue a court order that would appease her co-conspirators and the religious Christian right of Nebraska, including but limited to the co-Defendants.

6

15.     Defendant Strong purposely sabotaged Plaintiffs' case in Lancaster District Court by ruling that the term "the express purpose of" does not mean "sole" purpose (which it does), but rather, that the express purpose means "any" purpose.

### DEFENDANTS ARE ENGAGED IN A CIVL AND CRIMINAL CONSPIRACY

16.     In all, Defendants have passed three unconstitutional laws since 2017 in an effort to close Plaintiffs' businesses: the City of Omaha's Good Neighbor Ordinance, The Bottle Club Bill L.B. 1120 and the City of Omaha's Bottle Club Ordinance, all specifically directed at Plaintiffs, and have attempted to apply their "Lewd Conduct" ordinance to Plaintiffs' public picketing, protesting, and assembly without explanation of what constitutes "lewd conduct."

17.     The Bottle Club Laws, created and enforced by Defendants, seek to retroactively impose discriminatory, arbitrary, and unnecessary State and Municipal regulations, restrictions, and fees upon Club Omaha because nude dancing takes place there, and impose fines and penalties upon Plaintiffs for taking action that were legal and permissible prior to the passage of the Bottle Club Laws.

18.     The Bottle Club Laws further seek to harass the Plaintiffs and their members by arbitrarily demanding that they keep a list of all members and their addresses, requiring Plaintiffs to be subjected to "frequent" warrantless searches, and otherwise violating Plaintiffs' constitutional rights.

19.     The Bottle Club Laws are procedurally and substantively unconstitutional and have caused and will continue to cause significant and irreparable harm to Plaintiffs, their members, and their employees, including the loss of lawful and successful businesses and well-paying jobs.

### DEFENDANTS TRESPASSED UPON PLAINTIFFS' PROPERTY

20.     As part of Defendants civil and criminal conspiracy, the City of Omaha's Police

7

Department and Building Inspection Department trespassed upon Plaintiffs' private property located at 7301 Farnam Street on two separate occasions, July 21, 2018, and March 17, 2017, in violation of Plaintiffs' constitutional rights and in violation of a Nebraska criminal trespass statute.

21.    On July 21, 2018, Plaintiffs were accosted by approximately ten Omaha Police Officers, including five police vehicles and a helicopter while they were protesting at the corner of 72nd Street and Dodge Street and were assaulted, intimidated, and threatened with being arrested despite the fact that Plaintiffs had committed no crime.

22.    The City of Omaha's Police Department trespassed upon, and engaged in an illegal search of, Plaintiffs' private property on July 21, 2018 in violation of Plaintiffs' constitutional rights. Plaintiffs were accosted by approximately ten Omaha Police Officers, including five police vehicles and a helicopter while they were peacefully assembled at the corner of 72nd Street and Dodge Street.  Plaintiffs were assaulted, intimidated, and threatened with arrest despite the fact that Plaintiffs had committed no crime and were exercising their constitutional rights to free political speech, assembly, and expression.

### DEFENDANTS HAVE VIOLATED PLAINTIFFS RIGHTS TO PUBLICLY PROTEST

23.    On July 23, 2018, Plaintiffs' counsel sent Defendants the following email in a good faith attempt to clarify what attire is required by individuals who publicly protest, picket, and assemble in the City of Omaha which was ignored by Defendants, necessitating injunctive relief:

| | |
|---|---|
| **From:** | <evan@evanspenceresq.com>(r |
| **Date:** | Mon, Jul 23, 2018 12:04 am |
| **To:** | "Paul (Law)" <paul.kratz@cityofomaha.org>, "William Acosta-Trejo" <william.acosta-trejo@cityofomaha.org> |
| **Cc:** | jean.stothert@cityofomaha.org, pete.festersen@cityofomaha.org, ben.gray@cityofomaha.org, chris.jerram@cityofomaha.org, vinny.palermo@cityofomaha.org, rich.pahls@cityofomaha.org, brinker.harding@cityofomaha.org, aimee.melton@cityofomaha.org |
| **Bcc:** | "Shane Harrington" <shane@shaneharrington.com> |

Dear Omaha City Attorney Kratz,

I am writing on behalf of my client Shane Harrington regarding an incident that occurred on Saturday, July 21st at approximately 6:00 pm at Club Omaha and also to request clarification of Omaha's enforcement of any relevant laws, particularly NRS Sec. 20-112. Lewd Conduct and Public Indecency NRS Sec. 28-806.  Several Omaha police officers entered our private property at 7301 Farnam Street without a warrant, including the parking lot, exterior stairs, and opened our front door.  They refused to leave despite multiple requests.  They had no probable cause or warrant to justify this illegal search.  During this unlawful entry, I had to physically stand in front of the entrance door to stop ten police officers from entering the building and explain their unlawful actions as a deterrent from entering.  The unconstitutional trespass lasted for approximately 20 minutes and was documented on our high definition security cameras.

The illegal search was the response to Mr. Harrington and four adult entertainers engaging in their First Amendment right of speech and expression on the corner of 72nd and Dodge Street by holding signs while being scantily clad in underwear and nipple/areola pasties.  The signs read: "Honk if you {heart emoji} boobs."  Other side read "Club Omaha" with the club's logo.  This social and political demonstration was in response to the unconstitutional ruling of Judge Susan Strong last week regarding Club Omaha and the unconstitutional manner in which the State of Nebraska is treating my client, his employees, dancers, and 5,000 members of his club.  My client named the club "Club Omaha" to keep a low profile in the neighborhood and community so as not to offend anyone.  He has also refrained from advertising the past 17 months in an effort to not offend anyone in Omaha.  However, since he has been targeted for unconstitutional discrimination by the executive, legislative, and judicial branches of the Nebraska government, his best way to fight for his liberty and is through the freedom of speech and expression and by starting to publicly advertise for Club Omaha.  These demonstrations draw attention to the injustice that my client is facing and help garner support from the non-religious people in the Nebraska community.  These actions are not crimes and cannot be considered lewd conduct or public indecency under the meaning of those statutes.

The officers said they would not seek to press charges for any acts that had occurred but they wanted to be clear going forward what type of conduct was and wasn't permissible.  They alluded to Nebraska's "lewd conduct" Statute (NRS Sec. 20-112. Lewd Conduct - Prohibited. It shall be unlawful for any person purposely or knowingly to do a lewd act.) and (NRS Sec. 28-806. Public Indecency.)  However, the only cases prosecuted under "lewd conduct" or "public indecency" in Nebraska appear to be public exposure of genitals, pubic masturbation, and solicitation of prostitution.  The Omaha officers said that they were particularly concerned with the nipple/areola pasties worn by the dancers.

We are of the opinion that females demonstrating on a public street corner wearing panties or bikini bottoms (that cover vaginas and anus) and pasties over their nipples and areolas is legally protected under the First Amendment of the constitution.  A g-string and nipple/areola pasties have been worn by models in public in Lincoln, Nebraska without prosecution and at demonstrations throughout the country.  If not, we request an explanation of what statute(s) this violates, and what items of clothing women can legally wear in public in the City of Omaha:

panties, bikini bottom, g-string, nipple/areola pasties, bra, bikini top?  Is it legal for a man to wear underwear alone?

My client plans to stage another demonstration on Monday evening and requests a response to this inquiry by 5:00 pm Monday, July 23rd, to avoid legal intervention in federal court.

Sincerely,

Evan Spencer
Attorney at Law
305 Broadway, 7th Floor
New York, NY   10007
Tel. 917.547.4665
Evan@EvanSpencerEsq.com

---

24.     On March 17, 2017, John Doe Building Inspectors #1 and #2 trespassed on Plaintiffs property at 7301 Farnam Street without advance permission or warrant.

## CONCLUSION

25.     Plaintiffs request that this Court enjoin enforcement of Omaha's Lewd Conduct Ordinance, Omaha's Good Neighbor Ordinance, as well as the Bottle Club Laws and allow Plaintiffs to maintain the status quo at Club Omaha until their lease expires March 30, 2020, and that Plaintiffs be granted permission to resume protesting and assembling publicly with attire as determined by the Court (whether that be body paint, nipple/areola pasties, bikinis, etc.).

26.     Plaintiffs seek injunctive and declaratory relief together with compensatory damages in the amount of $5,000,000, punitive damages in the amount of $10,000,000 together with the attorneys' fees, interest, and costs of this action.

## JURISDICTION

27.     Plaintiffs invoke this Court's jurisdiction under 28 U.S.C. § 1343(a)(1)(2)(3) and (4), 28 U.S.C. § 1331 and the pendent and supplemental jurisdiction of the Court pursuant to 28 U.S.C.

§ 1367. This action is authorized and instituted pursuant to 42 U.S.C. § 1983, 42 U.S.C. § 1985, and the First, Fourth, Fifth, Seventh, and Fourteenth Amendments to the United States Constitution.

28.    This case presents an actual controversy because Plaintiffs are seeking a declaration of their rights under the United States Constitution. Under 28 U.S.C. §§ 2201 and 2202, this Court may declare the rights of Plaintiffs and grant further necessary or proper relief, including preliminary and permanent injunctive relief.

## VENUE

29.    Venue is proper under 28 U.S.C. § 1391(b).

## PARTIES

30.    Plaintiff Shane Harrington is an individual residing in Omaha, Douglas County, Nebraska, a taxpayer of the State of Nebraska, and principal officer of H & S Club Omaha, Inc., Midwest Girls Club, and Meltech, Inc.

31.    Plaintiff H & S Club Omaha, Inc. is a Nebraska corporation and taxpayer of the State of Nebraska that owns and operates Club Omaha.

32.    Plaintiff Midwest Girls Club is a Nebraska corporation and taxpayer of the State of Nebraska that owned and operated Midwest Girls Clubs.

33.    Plaintiff Meltech, Inc. is a Nebraska corporation and taxpayer of the State of Nebraska that owned and operated Paradise City.

34.    Defendant Susan Strong is a Judge in the Lancaster District Court of Nebraska, who issued a 24-page unconstitutional ruling against Plaintiffs after ruling that the Court had no jurisdiction over the case in violation of Nebraska State law, which requires the Court to rule on jurisdictional matters prior to ruling on the merits of a case. Susan Strong, at all material times,

11

was acting under color of state law, and the acts complained of and the wrongs committed were made possible by Susan Strong being granted power to act under the color of state law. Susan Strong has acted in concert with, in conjunction with, and conspired with the other Defendants, to violate the constitutional rights of Plaintiffs.

35.     Defendant Pete Ricketts is the Governor of the State of Nebraska who signed the Bottle Club Bill into law, appointed the Senator who introduced the Bottle Club Bill to the Nebraska State Senate, and otherwise encouraged co-Defendants to violate Plaintiffs' constitutional rights. Governor Ricketts, at all material times, was acting under color of state law, and the acts complained of and the wrongs committed were made possible by Governor Ricketts being granted power to act under the color of state law. Governor Ricketts has acted in concert with, in conjunction with, and conspired with the other Defendants, to violate the constitutional rights of Plaintiffs. Defendant Ricketts is a highly religious Christian and son of a billionaire who operates the State of Nebraska like a monarchy, controlling not only the executive branch of government, but the legislative and judicial branches as well in direct violation of the U.S. Constitution with disciples better known as "Ricketts Crickets," including but not limited to the Defendants in this action and their servants, agents, and employees.

36.     Defendant Theresa Thibodeau is a Nebraska State Senator appointed to the legislature by her personal friend and possible lover, Governor Pete Ricketts, despite the fact that she had no political or legal experience (only experience in the daycare industry). Defendant Thibodeau introduced the Bottle Club bill to the Nebraska Senate as L.B. 747 and added it as an amendment to the L.B. 1120 on the basis of defamatory accusations against Plaintiffs at the behest of Defendants including Ricketts and Melton. Theresa Thibodeau, at all material times, was acting under color of state law, and the acts complained of and the wrongs committed were made

12

possible by Theresa Thibodeau being granted power to act under the color of state law.  Theresa Thibodeau has acted in concert with, in conjunction with, and conspired with the other Defendants, to violate the constitutional rights of Plaintiffs.

37.    Defendant Patty Brooks is a Nebraska State Senator who defamed and discriminated against Plaintiffs to garner support for L.B. 1120.  Patty Brooks, at all material times, was acting under color of state law, and the acts complained of and the wrongs committed were made possible by Patty Brooks being granted power to act under the color of state law.  Patty Brooks has acted in concert with, in conjunction with, and conspired with the other Defendants, to violate the constitutional rights of Plaintiffs.

38.    Defendant Doug Petersen is the Attorney General of the State of Nebraska who has the authority and duty of enforcing the Bottle Club Bill against Plaintiffs and prosecuting Plaintiffs for violations of the Bottle Club Bill.  Doug Petersen, at all material times, was acting under color of state law, and the acts complained of and the wrongs committed were made possible by Doug Petersen being granted power to act under the color of state law.  Defendant Petersen has acted in concert with, in conjunction with, and conspired with the other Defendants, to violate the constitutional rights of Plaintiffs.

39.    Defendant Hobert Rupe is the Executive Director of the Nebraska Liquor Control Commission, tasked with interpreting the Bottle Club Bill and enforcing it against Plaintiffs in conjunction with the Attorney General and State Patrol.  Executive Director Rupe, at all material times, was acting under color of state law, and the acts complained of and the wrongs committed were made possible by Executive Director Rupe being granted power to act under the color of state law.  Executive Director Rupe has acted in concert with, in conjunction with, and conspired with the other Defendants, to violate the constitutional rights of Plaintiffs, including Rupe's false

characterization that Club Omaha is open to the public. Defendant Rupe has a personal vendetta against Plaintiff Shane Harrington dating back to Rupe's denial of Plaintiffs' liquor license application in 2011 due to Plaintiffs' involvement in the adult entertainment industry.

40.  Defendant Robert Batt is the Chairman of the Nebraska Liquor Control Commission, tasked with interpreting the Bottle Club Bill and enforcing it against Plaintiffs in conjunction with the Attorney General and State Patrol. Chairman Batt, at all material times, was acting under color of state law, and the acts complained of and the wrongs committed were made possible by Chairman Batt being granted power to act under the color of state law. Chairman Batt has acted in concert with, in conjunction with, and conspired with the other Defendants, to violate the constitutional rights of Plaintiffs.

41.  Defendant Colonel John Bolduc is the Superintendent of the Nebraska State Patrol, tasked with enforcing the Bottle Club Bill against Plaintiffs. Colonel Bolduc, at all material times, was acting under color of state law, and the acts complained of and the wrongs committed were made possible by Colonel Bolduc being granted power to act under the color of state law. Colonel Bolduc has acted in concert with, in conjunction with, and conspired with the Defendants, to violate the constitutional rights of Plaintiffs.

42.  Defendant Major Brenda Konfrst is the commander of the Nebraska State Patrol Eastern Field Services Division, including Troop A, based in Omaha. Major Konfrst, at all material times, was acting under color of state law, and the acts complained of and the wrongs committed were made possible by Major Konfrst being granted power to act under the color of state law. Major Konfrst has acted in concert with, in conjunction with, and conspired with the Defendants, to violate the constitutional rights of Plaintiffs.

43.  John and Jane Doe Nebraska State Patrol Officers #1 - #800 are the officers who are

tasked with enforcing L.B. 1120 against Plaintiffs.

44.     The City of Omaha is the municipal entity that operates the Omaha Police Department, the Omaha Building Department, and all municipal aspects of the City of Omaha.

45.     Defendant Jean Stothert is the Mayor of the City of Omaha and chief executive of the City of Omaha.  Mayor Stothert, at all material times, was acting under color of state law, and the acts complained of and the wrongs committed were made possible by Mayor Stothert being granted power to act under the color of municipal law.  Mayor Stothert has acted in concert with, in conjunction with, and conspired with the other Defendants, to violate the constitutional rights of Plaintiffs through the unconstitutional Omaha Bottle Club Ordinance and Good Neighbor Ordinance directed at Plaintiffs and by having her police department threaten to arrest Plaintiffs for publicly assembling in Omaha.

46.     Defendant Todd Schmaderer is the Police Chief of the City of Omaha.  Chief Schmaderer, at all material times, was acting under color of state law, and the acts complained of and the wrongs committed were made possible by Chief Schmaderer being granted power to act under the color of municipal law.  Chief Schmaderer has acted in concert with, in conjunction with, and conspired with the other Defendants, as well as subordinate police officers in the Omaha Police Department, to violate the constitutional rights of Plaintiffs, by threatening to arrest Plaintiffs for lawfully protesting publicly in Omaha.

47.     Defendant Colene Hinchy is the Captain of Omaha's Southwest Precinct which encompasses Plaintiffs' Club Omaha at 7301 Farnam Street.  Captain Hinchy, at all material times, was acting under color of state law, and the acts complained of and the wrongs committed were made possible by Captain Hinchy being granted power to act under the color of municipal law.  Captain Hinchy has acted in concert with, in conjunction with, and conspired with the other

Defendants, to violate the constitutional rights of Plaintiffs.

48.     Defendant Ken Kanger is a Deputy Police Chief of the City of Omaha. Deputy Chief Kanger, at all material times, was acting under color of state law, and the acts complained of and the wrongs committed were made possible by Deputy Chief Kanger being granted power to act under the color of municipal law.  Deputy Chief Kanger has acted in concert with, in conjunction with, and conspired with the other Defendants, to violate the constitutional rights of Plaintiffs.

49.     Defendant Michele Bang is a Deputy Police Chief of the City of Omaha.  Deputy Chief Bang, at all material times, was acting under color of state law, and the acts complained of and the wrongs committed were made possible by Deputy Chief Bang being granted power to act under the color of municipal law.  Deputy Chief Bang has acted in concert with, in conjunction with, and conspired with the other Defendants, to violate the constitutional rights of Plaintiffs.

50.     Defendant Paul Kratz is the Omaha City Attorney who failed to respond to Plaintiffs' written inquiry on July 23, 2018, regarding the legalities of public demonstration and protest in the City of Omaha and who also has the authority to enforce the Omaha Bottle Club Ordinance and Omaha Good Neighbor Ordinance.  City Attorney Kratz, at all material times, was acting under color of municipal law, and the acts complained of and the wrongs committed were made possible by City Attorney Kratz being granted power to act under the color of municipal law. City Attorney Kratz has acted in concert with, in conjunction with, and conspired with the other Defendants, to violate the constitutional rights of Plaintiffs and censor Plaintiffs' speech, expression and assembly at Club Omaha and in public.

51.     Defendant Aimee Melton is a City of Omaha Councilperson and sister of Defendant Theresa Thibodeau who has engaged in defamation and discrimination against Plaintiffs. City Councilperson Melton, at all material times, was acting under color of municipal law, and the

16

acts complained of and the wrongs committed were made possible by Councilperson Melton being granted power to act under the color of municipal law.  Councilperson Melton has acted in concert with, in conjunction with, and conspired with the other Defendants, to violate the constitutional rights of Plaintiffs.

52.     Defendant Chris Jerram is a City of Omaha Councilperson who has engaged in defamation and discrimination against Plaintiffs.  Councilperson Jerram, at all material times, was acting under color of municipal law, and the acts complained of and the wrongs committed were made possible by Councilperson Jerram being granted power to act under the color of municipal law.  Councilperson Jerram has acted in concert with, in conjunction with, and conspired with the other Defendants, to violate the constitutional rights of Plaintiffs.

53.     John Doe Building Inspectors #1 and #2 trespassed upon Plaintiffs' property 11 days prior to opening without permission or consent and at all material times, were acting under color of municipal law, and the acts complained of and the wrongs committed were made possible by them being granted power to act under the color of municipal law.  John Doe Building Inspectors #1 and #2 acted in concert with, in conjunction with, and conspired with the other Defendants, to violate the constitutional rights of Plaintiffs.

54.     John Doe Omaha Police Officers #1 - #10 harassed, menaced, assaulted, alarmed, intimidated, threatened, and discriminated against Plaintiffs and their dancers on July 21, 2018, and at all material times, were acting under color of municipal law, and the acts complained of and the wrongs committed were made possible by them being granted power to act under the color of municipal law.  John Doe Omaha Police Officer #1 - #10 acted in concert with, in conjunction with, and conspired with the other Defendants, to violate the constitutional rights of Plaintiffs.

17

55.     John and Jane Doe Omaha Police Officers #1 - #900 compose the City of Omaha's Police Department and are tasked with enforcing Omaha's Lewd Conduct Ordinance, Omaha's Bottle Club Ordinance and Good Neighbor Ordinance against Plaintiffs.

56.     The individual Defendants and John and Jane Doe Defendants, in their official and individual capacities, in conjunction with the City of Omaha, are engaged in a conspiracy to defame and violate the constitutional rights of Plaintiffs and are engaged in a custom and policy of discriminatory conduct against Plaintiffs.

## BACKGROUND

57.     Harrington is taxpayer of the State of Nebraska.  Harrington is an officer of and has an ownership interest in H & S Club Omaha, Inc.  Harrington is an officer of and has an ownership interest in Midwest Girls Club.  Harrington is an officer of and has an ownership interest in Meltech, Inc.

58.     Harrington has deep roots in Nebraska, including dozens of family members, children, and hundreds of friends, acquaintances, and connections throughout Nebraska.  Harrington's family has resided in Nebraska for over a century.

59.     Harrington has been designated public enemy #1 in Nebraska by Defendants, other Nebraska State and municipal entities, and the churches of the State of Nebraska since the mid 2000's when he attained local, national, and international fame for his multi-million-dollar pornographic web sites and adult themed parties.

60.     Additionally, Plaintiffs have performed at hundreds of bachelors' parties for thousands of Nebraskans over the past 15 years, arousing additional attention and discrimination.

61.     As a result of engaging in First Amendment free speech, expression and assembly, Plaintiffs have been the victim of discrimination, terroristic threats, vandalism, defamation,

trespass, assault with deadly weapons, and other criminal activities at the hands of Defendants, their servants, agents, and employees, and other individuals and entities throughout the State of Nebraska over the course of the past 15-plus years.

62.     In 2015, Plaintiffs created and implemented a novel idea and business plan to open members only private clubs featuring nude dancing in Nebraska.  Under laws and regulations in effect, no liquor license was required because Plaintiffs were not serving or selling any alcohol and the consumption of alcohol was not the reason or purpose for membership.  Plaintiffs' members, of suitable age, could bring in their own alcohol for their own consumption if they desired.

63.     In April 2015, Plaintiff Meltech, Inc. opened Paradise City in Buffalo County, Nebraska after four years of operation under a prior owner.  A Buffalo County ordinance specifically granted the club permission to operate.

64.     Plaintiff Midwest Girls Club opened locations of the same name in Hastings, Nebraska in December 2015 and Grand Island, Nebraska in July 2016.

65.     Midwest Girls Club opened in Hastings after receipt of written permission by the Hastings City Attorney.

66.     Midwest Girls Club opened in Grand Island with the permission of the building inspector, fire marshal, and Grand Island City Attorney.

67.     On or about March 1, 2017, Plaintiff H & S Club Omaha, Inc. opened Club Omaha in the space previously owned and operated by the 20's Showgirls Gentlemen's Club for approximately 20 years.

68.     Plaintiff H & S Club Omaha, Inc. entered into a 3-year lease for the property and building located at 7301 Farnam Street, Omaha, Nebraska, after receiving permission from the City of

Omaha's attorney's office, the Omaha building department, and Omaha assistant fire marshal.

69.     The Paradise City club, two Midwest Girls clubs, and Club Omaha will be referred to collectively as "the Clubs."

70.     Motivated by differing religious and moral beliefs and based entirely upon rumor, innuendo, false and misleading speculation, ignorance, outdated, false, and sexist stereotypes, and discrimination, Defendants conspired to intentionally harm Plaintiffs, chill and penalize speech, assembly, and expression to which they disagreed, and shut down the Clubs under the false guise of the need for regulation to redress problems that do not and have never existed.

71.     After opening Club Omaha in March 2017, Defendants the City of Omaha, Mayor Stothert, Chris Jerram, and Aimee Melton passed the Omaha Good Neighbor Ordinance specifically directed at regulating and closing Plaintiffs' business Club Omaha.

72.     Since the passing of that ordinance, Plaintiffs have not been ticketed or warned for violating that ordinance.

73.      In the fall of 2017, Defendant Pete Ricketts appointed Defendant Theresa Thibodeau as Senator to District 6 for the purpose of outlawing Plaintiffs' private membership clubs.

74.     Governor Ricketts and Senator Thibodeau have appeared together in television commercials, demonstrating their common religious agendas.

75.     Theresa Thibodeau was sworn in as Nebraska State Senator for the 6th District on October 19, 2017 and her first order of business seven weeks later was to introduce a two-page bill L.B. 747 entitled, "Provide for bottle clubs under the Nebraska Liquor Control Act" on January 3, 2018, for the purpose of outlawing Plaintiffs' private membership clubs.

76.     Defendant Thibodeau was also encouraged to introduce the Bottle Club Bill by her sister, Defendant Aimee Melton, a member of the Omaha City Council.

77.    After a public hearing on February 26, 2018, L.B. 747 failed to advance for lack of support.

78.    After these previous attempts failed, on March 28, 2018, Senator Thibodeau attempted to attach the Bottle Club Bill to a completely unrelated sex trafficking bill.

79.    Without any basis or evidentiary support whatsoever, Defendants Thibodeau and Brooks made all sorts of reckless, frivolous, malicious, and slanderous statements that the Clubs meet the definition of prostitution, the Clubs exploit females, the Clubs engage in sex trafficking, along with general inferences regarding pimps and "debt bondage."

80.    Defendants' claims were rejected.  It was correctly determined that the Bottle Club Bill was not germane to the sex-trafficking bill and that having a law involving multiple subjects was not constitutional and would not survive judicial review.  It was correctly determined by another Senator that the Bottle Club Bill was overly broad and unconstitutional.

81.    Thereafter, the Bottle Club Bill was fast tracked as an Amendment to L.B. 1120 entitled "Change provisions of the Nebraska Liquor Control Act and music licensing provisions" on April 3, 2018 as AM2784 (17-page amendment).

82.    On April 4, 2018, Defendants including Theresa Thibodeau held a press conference directly and publicly challenging Plaintiffs stating, "Bring it on bottle clubs, we are ready."

83.    On April 5, 2018, just two days after AM2784 was passed, AM2835 (33-page amendment) to L.B. 1120 was filed and adopted on April 9, 2018.

84.    Defendants' web site www.nebraskalegislature.gov states on its L.B. 1120 page on April 23, 2018 "Provisions/portions of L.B. 747 amended into L.B. 1120 by AM2784," when in fact AM2835 was the amendment adopted to L.B. 1120, further demonstrating that this Bill was rushed without following proper legislative procedures and protocol.

85.     Anger, spite, pettiness, and retaliation for the exercise of free speech or personal slights, are not rational, valid, or legitimate reasons for passing legislation and effectively declaring war on private business and law-abiding citizens; doing do so is an arbitrary, punitive, and unconstitutional abuse of power.

86.     Prior to passing the Bottle Club Laws and Good Neighbor Nuisance Ordinance, Defendants did not conduct even the most basic of due diligence, research, study, analysis, or investigation.

87.     In passing the Bottle Club Laws and Good Neighbor Ordinance, not one piece of actual evidence or testimony was obtained or presented that any of the Clubs has ever violated any law, posed a safety risk, resulted in a complaint or citation, or engaged in prostitution or sex trafficking.

88.     In passing the Bottle Club Laws and Good Neighbor Ordinance, not one piece of actual evidence or testimony was presented or referenced in the legislative history regarding negative secondary effects caused by Plaintiffs, other private membership clubs, or clubs offering the same entertainment services as Plaintiffs.

89.     Plaintiffs made continuous requests and invitations to the Defendants to inspect and observe the Clubs and operations themselves and talk to the hardworking females supposedly being exploited and trafficked, along with the members, staff, and security personnel.  All of Plaintiffs' invitations were ignored.

90.     The Bottle Club Bill required that Bottle Clubs obtain licenses by July 19, 2018, pay fees, maintain membership lists for inspection by Defendants, subject themselves to "frequent" inspections by police officers or other unidentified agencies in uniform or undercover during all hours of operation without a warrant or probable cause, along with numerous other intrusive,

unnecessary, and unconstitutional requirements designed to put the Clubs out of business.

91.    The City of Omaha's Bottle Club Ordinance includes the same requirements and takes effect August 15, 2018.

92.    The Omaha Good Neighbor Ordinance became effective in 2017.

93.    Passage of the Bottle Club Bill forced Plaintiffs to sell Paradise City and close the Midwest Girls Clubs in Grand Island and Hastings.

94.    The Defendants knew that the Bottle Club Laws are unconstitutional, but passed them regardless out of spite, revenge, and retaliation.

95.    On July 21, 2018, at approximately 5:50 pm, Plaintiffs protested the Bottle Club Laws at the corner of 72nd Street and Dodge Street, the closest major intersection to Plaintiffs' club, with signs that read: "Honk If You {Heart Emoji} Boobs."

96.    Defendants, including but not limited to the City of Omaha, John Doe Police Officers #1 - #10, and other members of the Omaha City Police Department, under the direction and control of Police Chief Todd Schmaderer, Mayor Jean Stothert, and City Attorney Paul Kratz, violated Plaintiffs' constitutional First Amendment rights threatening them with arrest during this demonstration and entering Plaintiffs property without a warrant and refusing to leave.

97.    Defendants threatened to arrest Plaintiff Shane Harrington and his fellow demonstrators for "lewd conduct" or "public indecency" when in fact Plaintiffs had committed no such crimes.

98.    Defendants have chilled Plaintiffs First Amendment rights of free speech, expression, assembly, and demonstration, and have engaged in prior restraint.

99.    Approximately ten police officers with guns entered Plaintiffs property for a period of approximately 20 – 30 minutes on July 21, 2018, threatening to arrest Plaintiff Shane Harrington and dancers that engaged in the protest and demonstration.

23

100.    Defendants demanded copies of "everyone's ID."

101.    These police officers refused to exit the property despite numerous requests and despite not having a warrant.

102.    Defendants acts constituted Criminal Trespass in the Second Degree, a violation of N.R.S. 28-521.

103.    Defendants the City of Omaha, Police Chief Todd Schmaderer, Mayor Jean Stothert, and City Attorney Paul Kratz allow and have allowed other individuals to protest, demonstrate, and advertise at the same intersection on behalf of Defendants Ricketts, Thibodeau, Stothert and other individuals and entities approved by the Defendants but have censored Plaintiffs' speech because they do not approve of the content.

104.    On or about August 15, 2018, the City of Omaha's Bottle Club Ordinance (similar to L.B. 1120), takes effect to impose additional unconstitutional regulations and restrictions upon Plaintiffs' business, Club Omaha.

105.    Club Omaha is Plaintiffs' only remaining club, maintaining a lease at its current location through March 30, 2020 at 7301 Farnam Street, Omaha, Nebraska.

**PLAINTIFFS HAVE OPERATED WITHOUT INCIDENT SINCE 2015**

106.    There is not and there has never been any known criminal or illegal activity permitted at the Clubs.  The Clubs are lawful, clean, and well-run establishments filled with hardworking individuals looking to get away from the stress of everyday life and have a good time.

107.    Since they opened, the Clubs have been overseen and regulated by the governments, laws, regulations, and ordinances of the jurisdictions where they are located.

108.    The Clubs have been open collectively around 1,000 nights without receiving a single ticket or violation by any law enforcement or regulatory agency or submitting a claim on their

liquor liability insurance policy for activities occurring at the Clubs.

109.    Defendant the City of Omaha passed a Good Neighbor Nuisance Ordinance directed at regulating Plaintiffs' Club Omaha in 2017 and Plaintiffs have yet to be ticketed or warned for violating this new ordinance.

110.    The Buffalo County Sheriff's office has thanked Plaintiffs on multiple occasions for the lawful manner in which Paradise City has been operated since April of 2015.

111.    The Clubs have collectively paid over $100,000 in state and local sales taxes, over and above state and federal income taxes.

112.    The Clubs have provided full-time and part-time jobs and contractor positions to hundreds of people at the Clubs, any of which are females, minorities, and other members of protected classes.

113.    Club Omaha supports local businesses including restaurants who deliver thousands of dollars in meals every month.

114.    Club Omaha poses no safety risk and constitutes the safest place for adult Nebraskans to congregate for the express purpose of viewing live entertainment.

115.    Plaintiffs care deeply about the safety of the independent contractors, members, and females that Defendants Thibodeau and Brooks irresponsibly and falsely claim to be exploited or trafficked.

116.    Plaintiffs have spent significant resources enacting many security measures and protocols to ensure that Club Omaha is as safe as possible.  All members provide copies of their identification and are bound by strict membership contracts.  Club Omaha is not open to the public.  Only members presenting identification are permitted to enter.  There are no drugs, underage consumption of alcohol, or illegal activities permitted.  Club Omaha has state of the art

security equipment, high definition security cameras, trained security personnel, and is covered by millions of dollars in insurance.

## CLAIMS FOR RELIEF

## FIRST CAUSE OF ACTION

### FIRST AMENDMENT VIOLATIONS TARGETING LAWFUL ASSEMBLY

117.    Defendants have interfered and continue to interfere with Plaintiffs' lawful protests in violation of Plaintiffs' First Amendment rights of speech, expression, and assembly.

118.    Plaintiff Shane Harrington and four dancers (hereinafter "the Assemblers") from Club Omaha began picketing, protesting, and assembling on the southwest corner of 72nd Street and Dodge Street at approximately 5:50 pm on Saturday July 21, 2018.

119.    They were scantily clad wearing underwear and nipple pasties holding signs that read: "Honk If You {heart emoji} Boobs."

120.    The purpose of the picketing was to draw attention to Plaintiffs' battles with the Defendants, to garner support from the public, and to protest the Bottle Club Laws and decision of Judge Susan Strong in the Lancaster District Court the prior week.

121.    Protests, assembly, and political speech of this nature are fundamental to the American system of democracy and are inalienable rights protected, secured, and guaranteed by the Constitutions of the United States of America and State of Nebraska.

122.    At all relevant times, Plaintiffs were engaging in political speech, the most protected form of speech as determined by the Supreme Court of the United States of America.

123.    Picketing and demonstrating of this nature have been approved throughout the United States, including Lincoln, Nebraska, where the authorities specifically allowed Plaintiffs' model Valerie Dodds to pose for photographs in public by the State Capital Building, Governor's

mansion, and her former Church, wearing only pasties and panties.

124. Within a matter of minutes after Plaintiffs' picketing began, Omaha City Police Officers were on the scene on foot, in police department vehicles, and by helicopter above, harassing and threatening Plaintiffs with being arrested for public indecency, lewd conduct, and obstruction of justice.

125. Plaintiffs' picketing was to be part of an ongoing protest and demonstration that was to include signs that read: "Jesus Loves Boobs", "God Loves Boobs"and "Ricketts & Thibodeau 'In Bed Together.'"

126. Plaintiffs speech and expression have been chilled, silenced, and censored by Defendants illegal and unconstitutional gestapo tactics.

127. Defendants routinely allow other individuals to picket and assemble at the same intersection in favor of the political campaigns, religious ideology of Defendants (like "Jesus Saves"), or even homeless people with signs requesting money, but prohibit Plaintiffs from picketing and assembling due to their disapproval of the content.

128. Wherefore, Plaintiffs request an order from this Court declaring that Defendants have violated Plaintiffs First Amendment rights and declaring what attire must be worn by female dancers who wish to picket publicly in Omaha, and that Plaintiffs be granted damages for the violation of their First Amendment rights.

## SECOND CAUSE OF ACTION

## FOURTH AMENDMENT TRESPASS BY DEFENDANTS WITHOUT A WARRANT

### INCIDENT #1

129. On July 21, 2018 and March 17, 2017, Defendants trespassed on Plaintiffs' property at 7301 Farnam Street, Omaha, Nebraska without warrant or advance permission.

130.    Defendants acts of trespass constitute an illegal search within the meaning of the Fourth Amendment as well as criminal trespass under Nebraska State law.

131.    Plaintiffs, individually, and their servants, agents, employees, and contractors live and work in fear that Defendants will enter Plaintiffs' property at any time without warrant.

132.    Defendant the City of Omaha's first overt acts occurred on March 13, 2017, eleven days before Plaintiffs' club opened.

133.    Defendants, by and through two building inspectors, Defendant John Doe Building Inspectors #1 and #2, trespassed upon Plaintiffs' property without warning or permission, purposely interrupting a television interview with KETV television news.

134.    One of these acts of trespass was captured on camera and aired twice on television news in Nebraska on March 13, 2017, at 6:00 pm and 10:00 pm, and perpetually thereafter on the internet and social media, tarnishing the reputation of Plaintiffs and wrongfully suggesting to the public that Plaintiffs were in violation of the Omaha Municipal Building Code.

135.    According to the CITY OF OMAHA's Municipal Code Section 43-9. Right of Entry: "Upon presentation of the proper credentials, the director of the planning department or his/her duly authorized representatives may enter at reasonable times any building, structure or premises within the jurisdictional area of the city to perform any duty imposed upon him/her by this chapter and the city's building code."

136.    Neither building inspector produced any credentials or even a business card upon entering Club Omaha and entry during a live television interview cannot be considered a "reasonable time" within the meaning of the statute.

### *INCIDENT #2*

137.    On July 21, 2018, from approximately 6:00 – 6:20/6:30 pm, approximately 10 police

officers, John Doe Police Officers #1 - #10, trespassed on Plaintiffs' property for approximately 20 – 30 minutes and refused to leave despite multiple requests.

138.    Defendants demanded entry to Club Omaha for the purpose of "copying everyone's ID."

139.    Defendants were carrying guns and other weapons and intentionally put Plaintiffs in fear of their safety and lives.

140.    Defendants held the exterior door of Plaintiffs' club open with their boots while they unlawfully interrogated the manager on duty.

141.    Members and dancers were discouraged from entering Club Omaha while this trespass took place.

142.    Members, dancers, and employees of Club Omaha witnessed this incident or heard about it from a third party, damaging Plaintiffs' reputation and suggesting that Plaintiffs are engaged in illegal conduct.

143.    Some Club Omaha, members, dancers, and employees as well as members of the public, were and are under the impression that Club Omaha was "raided" by Defendants for engaging in illegal conduct.

144.    Plaintiffs request damages for these two acts of trespass, including lost revenue, damages to Plaintiffs' reputation, and an order enjoining Defendants from entering Plaintiffs' property at 7301 Farnam Street without a warrant, including the parking lot, exterior stairs, and all interior portions of the building.

## THIRD CAUSE OF ACTION

### ASSAULT

145.    Defendants, including but not limited to John Doe Police Officers #1 - #10, assaulted Plaintiff Shane Harrington and four dancers of Club Omaha on the evening of July 21, 2018.

146.    Defendants chased Plaintiffs from a public place with their guns, tasers, baton sticks, flashing police vehicle lights, a helicopter, and otherwise threatened and intimidated Plaintiffs in a menacing matter, constituting Third Degree Criminal Assault under Nebraska law.

147.    Defendants chased Plaintiffs from the southwest corner of 72nd and Dodge, approximately 200 yards to Plaintiffs' property at 7301 Farnam Street.

148.    Plaintiffs and his dancers feared and continue to fear for their safety as a result of Defendants' assaults.

## <u>FOURTH CAUSE OF ACTION</u>

## <u>OMAHA'S LEWD CONDUCT ORDINANCE IS OVERBROAD AND VAGUE</u>

149.    Defendant the City of Omaha Section 20-112. – Lewd conduct – Prohibited. Merely states: "It shall be unlawful for any person purposely or knowingly to do a lewd act."

150.    Omaha Police Officers informed Plaintiffs on July 21, 2018, that their picketing while scantily clad may or may not constitute a "lewd act" and that they themselves were not sure.

151.    Omaha Police Officers told Plaintiffs to contact the Omaha City Attorney to clarify this matter but after doing so, the Omaha City Attorney Defendant Paul Kratz failed to respond to Plaintiffs' written email request of July 23, 2018.

152.    Therefore, without a ruling or clarification from this Court, Plaintiffs are unable to picket, protest, and publicly assemble in the City of Omaha without fear of being arrested by Defendants.

153.    This constitutes irreparable harm for purposes of equitable relief as Plaintiffs' First Amendment rights have been censored for a period of weeks and counting.

154.    The most recent federal opinion from Colorado in 2017 allows females to picket and/or assemble completely topless without pasties in public.

155.    Plaintiffs request and order enjoining enforcement of Omaha's "Lewd Conduct"

ordinance for being overbroad and vague, and that Plaintiffs female dancers be granted

permission to publicly assemble while topless, or at the very least, wearing pasties and panties,

or alternatively, in a manner ordered by this Court.

## FIFTH CAUSE OF ACTION

### DECLARATORY RELIEF

### CLUB OMAHA IS NOT A BOTTLE CLUB

156.    The Bottle Club Laws have no application to Club Omaha, under their plain and express

language, because Club Omaha is not a "Bottle Club."

157.    Plaintiffs sold Paradise City and closed Midwest Girls Clubs in Hastings and Grand

Island.  Shakers (owned by a third party) has announced they are not applying for a Bottle Club

license.

158.    Therefore, Club Omaha is the only "operation" of five targeted by Defendants that is

subject to the Bottle Club Bill and Omaha Bottle Club Ordinance.

159.    Section 3 of the Bottle Club Bill, codified as Neb. Rev. Stat. § 53-103.47, defines a Bottle

Club as:

> Bottle club means an operation whether formally organized as a club with a
> membership list or not, keeping or maintaining premises where persons who have
> made their own purchases of alcohol liquor congregate for "the express purpose
> of" consuming alcoholic liquor upon payment of a fee or other consideration.
> (emphasis added)

160.    The Nebraska Liquor Control Commission through its website and frequency asked

questions agrees and advertises to the public that no liquor license should be required for private

events that are not open to the public.

161.    Plaintiffs' members do not and have never came to or joined Club Omaha for "the express

purpose of" consuming alcoholic liquor and Club Omaha is not open to the public.

162.    "Express purpose" means "sole purpose" or "exclusive purpose" – Plaintiffs' members do not and have never patronized Club Omaha for sole or exclusive purpose of consuming alcohol any more than people attend Church for the express purpose of consuming alcohol or join a fraternity for the express purpose of consuming alcohol.

163.    Members are not required or even encouraged to bring alcohol into Club Omaha.

164.    In fact, Plaintiffs have members that are under the legal age of consumption in Nebraska, members that do not consume alcohol ever, and members that choose not to bring their own alcohol into Club Omaha.

165.    Plaintiffs' members do not and have never came to or joined Club Omaha to congregate.

166.    Plaintiffs' members come to Club Omaha for the express purpose of viewing live entertainment.

167.    Pursuant to Plaintiffs' membership application, "(A)ll fees expressly paid for viewing live entertainment only."

168.    Plaintiffs' members do not pay a fee or any consideration for "the express purpose of" consuming alcohol.

169.    Plaintiffs' members pay a fee for "viewing live entertainment only," which includes watching naked girls and listening to live disk jockeys.

170.    There is no addition fee or consideration charged to members who bring their own alcohol.

171.    Members who choose to bring their own alcohol are charged the same fee as members who choose not to, including members ages 18 – 20 who are prohibited from consuming alcohol.

172.    Wherefore, Plaintiffs request a declaratory judgment ruling that Club Omaha is not a

"Bottle Club" within the meaning of the Bottle Club Laws and enjoining Defendants from enforcing the Bottle Club Laws against Plaintiffs.

<u>**SIXTH CAUSE OF ACTION**</u>

**DECLARATORY RELIEF**

**ENJOIN ENFORCEMENT OF JUDGE STRONG'S OPINION OF JULY 18, 2018**

173.    Judge Strong issued a decision on July 18, 2018, in a prior case filed by Plaintiffs in the Lancaster District Court of Nebraska that violates Plaintiffs' constitutional rights.

174.    Firstly, Judge Strong ruled that the Court lacked jurisdiction so the opinion of the Court should be enjoined from enforcement as it should not have been issued in the first place.

175.    The opinion itself is unconstitutional because Judge Strong failed to properly define the phrase "the express purpose of" in the context of the Bottle Club Bill.

176.    In fact, her definition is the precise opposite of the true definition.

177.    Judge Strong falsely ruled: "Moreover, L.B. 1120 does not require the members have the "sole purpose" of consuming alcoholic liquor, but rather, an "express purpose." Black's Law Dictionary defines "express" as "clearly and unmistakably communicated; stated with directness and clarity."

178.    Either unaware that the word "express" can be a verb, noun, or adjective (or 100% cognizant of what she was doing), Defendant Strong picked the definition of a verb because it best suited her argument; an argument that would put Plaintiffs' clubs under the definition of a "Bottle Club" and subject to numerous regulations that would put Club Omaha out of business.

179.    However, the term "the express purpose of" does not use the word "express" as a verb. Express is an adjective used to describe the noun "purpose" and in every context imaginable it is clear that "express purpose" means the sole or exclusive purpose.

180.   A search on Westlaw for the phrases "the express purpose of" and "express purpose of" yields thousands of cases where "the express purpose of" and "express purpose of" are used in the context of "sole purpose" or "exclusive purpose."

181.   The following are a few examples in a variety of legal contexts:

(a) "Because Blaeser's convictions were modified for **the express purpose of** enabling him to become eligible for safety valve relief, and *not for reasons related to his innocence or errors of law*, the sentences must be counted when calculating his criminal history score." U.S. v. Blaeser, 105 Fed.Appx. 130, 132, 2004 WL 1687225, at *1 (C.A.8 (Minn.),2004)

(b) "(R)espondents placed their refuse at the curb for **the express purpose of** conveying it to a third party, the trash collector…" California v. Greenwood, 108 S.Ct. 1625, 1626, 486 U.S. 35, 35 (U.S.Cal.,1988)

(c) "Other objections to the validity of the judgment must be raised by direct appeal or in a separate proceeding commenced for **the express purpose of** setting aside the judgment alleged to be invalid." State v. Jones, 362 N.W.2d 58, 59, 219 Neb. 184, 185 (Neb.,1985)

(d) "(A) debtor's conversion of non-exempt property to exempt property on the eve of bankruptcy for **the express purpose of** placing that property beyond the reach of creditors, without more, will not deprive the debtor of the exemption to which he otherwise would be entitled." Hanson v. First Nat. Bank in Brookings, 848 F.2d 866, 868 (C.A.8 (S.D.),1988)

(e) "(I)n a separate proceeding commenced for **the express purpose of** setting aside the judgment alleged to be involved." State v. Brand, 1992 WL 196802, at *1 (Neb.App.,1992)

(f) "On January 28, 1994, Schlueter went to the EEOC office for **the express purpose of** filing a charge." Schlueter v. Anheuser-Busch, Inc., 132 F.3d 455, 457 (C.A.8 (Mo.),1998)

(g) "Martinez-Cortez sought and obtained a reduction of the first term of probation from 365 to 364 days for **the express purpose of** avoiding a criminal history point in his federal drug sentencing." U.S. v. Martinez-Cortez, 354 F.3d 830, 831 (C.A.8 (Minn.),2004)

(h) "(T)hey were made freeholders for the only and **express purpose of** permitting them to sign the petition for a license." In re Steen, 139 N.W. 683, 684 (Neb. 1913)

(i) "(RICO) violation for misusing facilities of interstate commerce to run illegal business after having transported 17-year-old woman across state lines for **express purpose of** prostitution." U.S. v. Branch, 421 Fed.Appx. 659 (C.A.8 (Mo.),2011)

(j) "(T)he lumber was purchased for that **express purpose**, and it was so used." White Lake Lumber Co. v. Russell, 34 N.W. 104, 106 (Neb. 1887)

182.   Merriam Webster's first definition of "express" is "of a particular or exact sort" (ex. A trip to the supermarket with "the express purpose of" buying milk)

183.   Merriam Webster lists the following words as synonyms of the adjective "express"

(concrete, distinct, precise, and specific).

184.   "Express purpose" is a phrase defined by the Urban Dictionary as: "specific object; explicit and sole goal."

185.   The tenth definition of "Express" on dictionary.com is an adjective, "special; definite: we have an express purpose in being here."

186.   The website www.answers.yahoo.com gives two examples of "the express purpose of" (sole/exclusive purpose): (a) "Coming just days before Obama's second inauguration, the move represents the first time a sitting president has every transformed his presidential campaign into an outside group with **the express purpose of** promoting his agenda, and (b) Rising to the call, William Gillbee, a gallery trustee, bequeathed a generous 1000 pounds with **the express purpose of** commissioning an artist to paint an interesting event in Australian history.

187.   According to Dictionary.reverso.net, "(I)f you refer to an express intention or purpose, you are emphasizing that it is a deliberate and specific one that you have before you do something."

188.   Lancaster District Judge Strong essentially ignored the word "express" and ignored the phrase "the express purpose of" in her illegal, unconstitutional, and criminal opinion of July 18, 2018.

189.   Either Judge Strong lacks a basic grasp of the English language or she screwed over the Plaintiffs on purpose; in either event her opinion should be enjoined as unconstitutional.

190.   Wherefore, Plaintiffs request a TRO, preliminary injunction, and declaratory judgment enjoining Defendants from enforcing the unconstitutional opinion of Lancaster District Judge Susan Strong of July 18, 2018 against Plaintiffs, and only applying the Bottle Club Laws to "operations" where people congregate for "the exclusive purpose of consuming alcohol."

## SEVENTH CAUSE OF ACTION

## JUDICIAL MISCONDUCT

191.    When a judge intentionally violates their oath as a judge and turns the law and the English language upside down and inside out for the exclusive purpose of denying Plaintiffs' justice, they have committed Judicial Misconduct.

192.    Such is the case here with Judge Susan Strong.

193.    Strong has engaged in intentional Judicial Misconduct in violation of: Neb.Rev.St. § 24-722 Justice or judge; discipline or removal; grounds. A Justice or judge of the Supreme Court or judge of any court of this state may be reprimanded, disciplined, censured, suspended without pay for a definite period of time not to exceed six months, or removed from office for (1) willful misconduct in office, (2) willful disregard of or failure to perform his or her duties, or (6) conduct prejudicial to the administration of justice that brings the judicial office into disrepute…"

194.    Defendant Susan Strong's 24-page court order, including but not limited to her failure to properly define a basic legal term: "the express purpose of," is so extreme and outrageous as to constitute Judicial Misconduct as she has engaged in "willful misconduct in office," "willful disregard of and failure to perform her duties" and "conduct prejudicial to the administration of justice that brings the judicial office into disrepute."

195.    Defendant purposely defined Plaintiffs' private membership clubs because she wanted to shut down their doors to appease her co-Defendants and the religious Christian right in Nebraska.

196.    Wherefore, Plaintiffs request a TRO, preliminary injunction, and declaratory judgment enjoining enforcement of Defendant Strong's opinion.

## **EIGHTH CAUSE OF ACTION**

## **FIRST AMENDMENT OVERBREADTH CHALLENGE**

## **FACIAL CHALLENGE TO L.B. 1120**

197.    Defendants' definition of a "Bottle Club" is overbroad and vague, applying to a variety of unrelated businesses and is therefore unconstitutional.

198.    According to Defendants, a Bottle Club is considered an "operation" where alcohol is consumed by two or more people and fees or other consideration is paid.

199.    If Defendant Strong's definition of a "Bottle Club" is universally and evenly applied to all "operations" in Nebraska where "money or consideration" is paid for "the express purpose of" consuming alcohol by two or more people, this will apply to the following businesses and entities which will now require a Bottle Club license: (a) Parking Lots: Any paid parking lot that allows tailgating, including but not limited to the Husker's parking lots, College World Series parking lots, State Fair parking lots, Arena Parking Lots (CenturyLink, Pinnacle, Ralston, etc.); (b) Fraternity/Sorority: Any fraternity or sorority that allows consumption of alcohol by two or more people; (c) Church: Any Church where wine or other alcohol is consumed by two or more people including weddings and holidays; (d) Clubs: Country Clubs, Tennis Clubs, Bridge Clubs, or any other club where two or more people consume alcohol; (e) Golf Courses: Any golf courses that allow alcohol consumption by two or more persons; (f) Public or Private Parks/Lakes/Campgrounds:  If any fees are paid and two or more people consume alcohol; and (g) Hotels/Motels where alcohol is consumed by two or more persons; (h) Any other "operation" that accepts dues, fees, or donations and allows consumption of alcohol by two or more persons.

200.    This definition of "Bottle Club" would literally encompass hundreds if not thousands of other businesses and entities when Defendants only anticipated applying the Bottle Club Laws to

Plaintiffs.

201.    According to the July 18, 2018, Lancaster Court opinion, if even two of Plaintiffs' 20,000 members consume alcohol they are to be classified as a Bottle Club, because it only takes two to congregate in the opinion of Defendants.

202.    Under the express and plain language of Neb. Rev. Stat. § 53-103.47, Club Omaha is not a Bottle Club, making the entire Bottle Club Bill and the City of Omaha's Bottle Club Ordinance inapplicable to Plaintiffs.

203.    Plaintiffs seek a TRO, preliminary injunction, and declaratory judgment ruling that the Bottle Club Laws are overbroad and vague and may not be enforced against Plaintiffs or any other operation in Nebraska.

<u>**NINTH CAUSE OF ACTION**</u>

**FIRST AMENDMENT RIGHTS OF FREE SPEECH, EXPRESSION AND ASSEMBLY**

204.    The First Amendment to the Constitution of the United States reads:

> Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the government for a redress of grievances.

205.    Plaintiffs, their members, and their contract employees utilize Club Omaha to exercise their constitutionally guaranteed rights of free speech, peaceful assemble, and free expression.

206.    As a result of having different religious beliefs than Defendants, Plaintiffs, their members, and their contract employees have been persecuted, discriminated against, and denied due process, equal protection, and free expression and otherwise harmed and damaged by Defendants.

207.    Defendants have engaged and continue to engage in discrimination of Plaintiffs' business because they have moral and religious objections to what occurs inside Club Omaha, including

the rights of Plaintiffs, their members, and their contract employees to express themselves by viewing or engaging in live nude dancing.

208.    The United States Supreme Court has previously determined that non-obscene nude and partially nude dancing is expressive conduct within the protection of the First Amendment.

209.    The Bottle Club Laws and Good Neighbor Nuisance Ordinance were not passed for any legitimate interest or due to any illegal conduct by Plaintiffs, but rather, because Defendants disapprove of the legal activities that occur inside Club Omaha, which cannot be seen or heard by the general public or any businesses or neighbors in the surrounding community.

210.    Defendants actually have no idea what activities go on inside Club Omaha because they ignored Plaintiffs' requests to come and see for themselves prior to rendering judgment.

211.    Defendants' conduct does not have a secular purpose.  Defendants are using the Bottle Club Laws to discriminate against Plaintiffs, promote their religious beliefs, abridge the freedom of speech, assembly, and expression of Plaintiffs, their members, and their contract employees, and to retaliate and punish Plaintiffs, their members, and their contract employees from exercising their freedom of speech, assembly, and expression, and from not sharing the same religious and moral beliefs of Defendants.

## TENTH CAUSE OF ACTION

### FOURTEENTH AMENDMENT VIOLATIONS

### VIOLATIONS OF EQUAL PROTECTION RIGHTS

212.    Defendants have denied Plaintiffs equal protection of the law by specifically targeting Plaintiffs and Club Omaha for discriminatory treatment because of Plaintiffs' form of speech, expression, assembly, and due to the fact that Plaintiffs' members, employees, and contractors, are largely minorities and other protected class members, including women, African-Americans,

Latinos, and Asians, along with a high percentage of members of the LBGT community.

213.   The Bottle Club Laws were adopted by Defendants for the sole purpose of closing Plaintiffs' Clubs including Club Omaha and causing Plaintiffs harm, without being applied to other businesses or individuals in Nebraska that allow the consumption of alcohol, including but not limited to churches, fraternities and sororities, country clubs, tennis clubs, bridge clubs, hotels and motels, tailgating parties, and other private venues.

214.   The Plaintiffs are intentionally being discriminated against and being treated differently than similarly situated businesses and entities, including establishments where alcohol is sold and consumed, other membership organizations, and other private clubs.

215.   For example, the Bottle Club Laws require Plaintiffs to maintain a list of their members' identities and addresses.

216.   The requirement is punitive and solely designed to prevent and dissuade new members from joining Club Omaha or current members to continue or renew their memberships.

217.   The requirements have already led to the closure of two Clubs and the loss of significant revenue at Club Omaha.

218.   There is no similar provision for gun clubs, religious clubs, political clubs, golf clubs, bridge clubs, tennis clubs, or any other clubs that may have alcohol at their meetings or activities.

219.   There is no similar requirement for establishments in Nebraska that sell alcohol such as bars and restaurants.

220.   The Bottle Club Bill also arbitrarily prevents the holder of a bottle club license from simultaneously holding a liquor license.

221.   This prohibition does not apply to similarly situated individuals and establishments, but is

designed to discriminate against Plaintiffs, who wish to apply for one or more liquor licenses in the future.

222.    Additionally, L.B. 1120 requires Plaintiffs to close from 5:00 am – 6:00 am.  Such a restriction is not imposed on any other business or entity in Nebraska, including Flying Timber, the Omaha axe-throwing bar approved for a liquor license by the Omaha City Council in June 2018.

223.    Club Omaha is a place of assembly entitled to constitution protection.  Defendants allow religions, professional associations, fraternities, sororities, and other clubs and entities to assemble peacefully with alcohol without harassment, frequent searches, and arbitrary limitations on hours.

224.    Defendants have violated the equal protection rights of Plaintiffs' dancers by allowing Plaintiff Shane Harrington to picket without covering his torso and nipples and threatening to arrest Plaintiffs' female dancers for picketing with pasties covering their nipples and areolas as this holds the genders to a different standard.

## ELEVENTH CAUSE OF ACTION

## CONTRACTS CLAUSE VIOLATIONS

225.    The Constitution of the United States, Article I, § 9, provides, in pertinent part: "No State shall… pass any…Law impairing the Obligation of Contracts."

226.    Plaintiffs entered a 3-year lease for the property located at 7301 Farnam Street, Omaha, Nebraska, on or about March 1, 2017, after obtaining written permission from Defendants to open and operate a private membership with nude dancing where members could bring their own alcohol (BYOB) for consumption (as they had previously done in three locations in central Nebraska).

227.    Plaintiffs presently owe approximately $150,000 in rent for the remainder of their lease.

228.    Since March 1, 2017, Club Omaha has entered into contracts with thousands of members to provide a private membership Club with nude dancing and BYOB in exchange for membership fees.

229.    The Bottle Club Laws retroactively impairs the obligations of Plaintiffs' membership contracts and lease and are therefore unconstitutional.

230.    Plaintiffs request permission from this Court to maintain the status quo at Club Omaha until Plaintiffs' lease expires March 30, 2020 and that this Court enjoin enforcement of the Bottle Club Laws against Club Omaha.

## TWELTH CAUSE OF ACTION

### BILL OF ATTAINDER

231.    The Constitution of the United States, Article I, Section 9, provides, in pertinent part: "No Bill of Attainder…will be passed."

232.    The Bottle Club Laws (while ultimately flawed) were specifically designed to target the Plaintiffs for disparate treatment and punishment.

233.    Plaintiffs received written permission from Defendants to open and operate Club Omaha prior to opening.

234.    Defendants passed the Bottle Club Laws and Good Neighbor Nuisance Ordinance with the intention of harming Plaintiffs and legislating the Clubs out of business.

235.    The false and defamatory statements made by the Defendants regarding the Clubs and the requirements of "frequent" searches by law enforcement and the retention of membership lists were designed to harm the reputation of the Clubs and their members, intimidate the Clubs and their members, discourage people from joining the Clubs, and spread fear, anger, and hatred of

the Plaintiffs and their lawful establishments throughout Nebraska.

236.    The legislative history of the Bottle Club Bill specifically states that it pertains to five businesses (Plaintiffs' four clubs plus Shakers).

237.    The Defendants supporting the Bottle Club Laws have specifically and consistently referenced Plaintiffs and their Clubs in hearings, in the press, at press conferences, and in social meeting.

238.    Defendant Thibodeau has even posted pictures of Club Omaha when discussing the proposed Bottle Club Bill.

239.    The Defendants believe that the Bottle Club Laws apply to Plaintiffs and intend to unlawfully enforce their provisions against Plaintiffs.

240.    In fact, Defendants specifically and publically challenged Plaintiffs to file this lawsuit.

241.    Since Plaintiffs have sold one club and closed two clubs and Shakers is not applying for a Bottle Club license, there can be no doubt that Club Omaha is the one and only business targeted by the Bottle Club Laws.

242.    Consequently, the Bottle Club Laws violate the Bill of Attainder Clause and should be declared invalid, unconstitutional, and ultra vires.

## THIRTEENTH CAUSE OF ACTION

## EX POST FACTO LAW

243.    The Constitution of the United States, Article I, Section 9, provides, in pertinent part: "No…ex post facto Law will be passed."

244.    In reliance upon the laws and regulations existing at the time, Plaintiffs spent hundreds of thousands of dollars and four years working with zoning experts, lawyers, accountants, contractors, and other experts building and developing their operations and a large membership

base.

245.   Plaintiffs received written permission from Defendants to open and operate Club Omaha prior to opening.

246.   Plaintiffs have vested contractual rights, including property rights in the Cities of Omaha and the town of Elm Creek.

247.   The Bottle Club Laws attempt to retroactively change the legal consequences and/or status of the actions that took place and the relationships that existed prior to their passage.

248.   The Bottle Club Laws attempt to regulate, criminalize, and penalize actions that were legal and authorized prior to their passage and when committed and that Defendants had no power or authority to regulate.

249.   The Defendants supporting the Bottle Club Laws have specifically and consistently referenced Plaintiffs and their Clubs in hearings, in the press, at press conferences, and in social meeting.

250.   Defendant Thibodeau has even posted pictures of Club Omaha when discussing the proposed Bottle Club Bill.

251.   The Bottle Club Bill does not include a "penalty" for violation or indicate whether a violation of the Bottle Club Bill is classified as an infraction, Misdemeanor, or Felony.  The prior version of Nev. Rev. Stat. § 53-186.01(4) and (5) specified the penalties for violations.

252.   The Bottle Club Laws retroactively deprive Plaintiffs of the use of their properties.

253.   The Bottle Club Laws retroactively damages and interferes with the contractual rights of Plaintiffs and their thousands of members.

254.   The Bottle Club Laws retroactively violates Plaintiffs' constitutional rights.

255.   Since Plaintiffs have sold one club and closed two clubs and Shakers is not applying for a

Bottle Club license, there can be no doubt that Club Omaha is the one and only business targeted

by the Bottle Club Laws.

256.    Consequently, the Bottle Club Laws violate the Ex Post Facto Clause and should be

declared invalid and ultra vires.

## FOURTEENTH CAUSE OF ACTION

### VIOLATION OF 42 U.S.C. § 1983

257.    The First Amendment to the Constitution of the United States reads:

> Congress shall make no law respecting an establishment of religion, or
> prohibiting the free exercise thereof; or abridging the freedom of speech,
> or of the press; or the right of the people peaceably to assemble, and to pe-
> tition the Government for a redress of grievances.

258.    The Fourth Amendment to the Constitution of the United States reads:

> The right of the people to be secure in their persons, houses, papers, and
> effects, against unreasonable searches and seizures, shall not be violated,
> and no Warrants shall issue, but upon probable cause, supported by Oath
> or affirmation, and particularly describing the place to be searched, and
> the persons or things to be seized.

259.    The Fourteenth Amendment to the Constitution of the United States provides in pertinent

part:

> All persons born or naturalized in the United States, and subject to the juris-
> diction thereof, are citizens of the United States and of the State wherein
> they reside. No State shall make or enforce any law which shall abridge the
> privileges or immunities of citizens of the United States; nor shall any State
> deprive any person of life, liberty, or property, without due process of law;
> nor deny to any person within its jurisdiction the equal protection of the
> laws.

260.    Article I, § 3 of the Nebraska Constitution guarantees that:

> No person shall be deprived of life, liberty, or property, without due process
> of law, nor be denied equal protection of the laws.

261.    Article I, § 5 of the Nebraska Constitution guarantees that:

> Every person may freely speak, write and publish on all subjects, being re-
> sponsible for the abuse of that liberty; and in all trials for libel, both civil
> and criminal, the truth when published with good motives, and for justifia-
> ble ends, shall be a sufficient defense.

262.    Article I, § 7 of the Nebraska Constitution guarantees that:

> The right of the people to be secure in their persons, houses, papers, and ef-
> fects against unreasonable searches and seizures shall not be violated; and
> no warrant shall issue but upon probable cause, supported by oath or affir-
> mation, and particularly describing the place to be searched, and the person
> or thing to be seized.

263.    42 U.S.C. § 1983 is captioned "Civil action for deprivation of rights" and states, in perti-

nent part:

> Every person who, under color of any statute, ordinance, regulation, cus-
> tom, or usage, of any State or Territory or the District of Columbia, sub-
> jects, or causes to be subjected, any citizen of the United States or other
> person within the jurisdiction thereof to the deprivation of any rights, priv-
> ileges, or immunities secured by the Constitution and laws, shall be liable
> to the party injured in an action at law, suit in equity, or other proper pro-
> ceeding for redress

264.    Defendants violated the rights of Plaintiffs guaranteed under Federal and State law,

including 42 U.S.C. § 1983, the First, Fourth, and Fourteenth Amendment to the United States

Constitution, Article I, § 3, Article I, § 5, and Article I, § 7 of the Nebraska Constitution, by

conspiring to deter, intimidate, threaten, harass, and assault Plaintiffs, trespassing upon and

illegally searching Plaintiffs' private property, retaliating, punishing, and threating to arrest,

detain, and incarcerate Plaintiffs for exercising their rights to free speech, assembly, and

expression and for not sharing the same religious and moral beliefs of Defendants, and

attempting to promote and force their religious and moral beliefs upon Plaintiffs.

## FIFTEENTH CAUSE OF ACTION

### VIOLATION OF 42 U.S.C. § 1985

265.    42 U.S.C. § 1985(2) is captioned "Obstructing justice; intimidating party, witness, or

juror" and states:

> If two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified, or to influence the verdict, presentment, or indictment of any grand or petit juror in any such court, or to injure such juror in his person or property on account of any verdict, presentment, or indictment lawfully assented to by him, or of his being or having been such juror; or if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws.

266.    Defendants violated 42 U.S.C. § 1985(2) by conspiring to deter, hinder, and obstruct, by intimidation, threat, and force, Plaintiffs from exercising their rights to peaceful protest and to challenge and speak out against the Bottle Club Laws.

267.    Defendants further violated 42 U.S.C. § 1985(2) by conspiring to injure, retaliating against, and punishing Plaintiffs for having exercised their right to seek judicial relief and chilling their exercise of that right in the future.

268.    Defendants further violated 42 U.S.C. § 1985(2) by conspiring for the purpose of impeding, hindering, obstructing, and defeating the due course of justice with intent to deny the Plaintiffs equal protection of the laws.

269.    Defendants further violated 42 U.S.C. § 1985(2) by conspiring to injure the Plaintiffs for attempting to enforce their rights to equal protection.

270.    42 U.S.C. § 1985(3) is captioned "Depriving persons of rights or privileges" and states:

> If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled

to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

271.   Defendants violated 42 U.S.C. § 1985(3) by conspiring to injure the Plaintiffs, by force, intimidation, and threat, through their persons and property, on account of their support and advocacy in a legal manner challenging and protesting laws related to Plaintiffs and Club Omaha.

272.   Defendants further violated 42 U.S.C. § 1985(3) by depriving Plaintiffs of having and exercising rights and privileges that they are guaranteed as citizens of the United States of America.

273.   Wherefore, Plaintiffs request equitable relief and monetary damages.

## SIXTEENTH CAUSE OF ACTION

## NEB. REV. STAT. § 53-123.08 IS AN UNCONSTITUTIONAL VIOLATION

## OF THE FIRST, FOURTH, FIFTH, AND FOURTEENTH AMENDMENTS

274.   Aside from being unconstitutional in its entirety for reasons discussed throughout this Complaint, there are numerous sections of the Bottle Club Bill that are further unconstitutional on their face, including the following:

> 53-123.08. Bottle club license; rights of licensee.
> (1) A bottle club may be operated by a club, an individual, a partnership, a limited liability company, or a corporation. An accurate and current membership list shall be maintained upon the licensed premises which contains the names and residences of the members but shall not be subject to disclosure except as required by warrant, subpoena, or court order.
> (2) A bottle club shall not operate on any day between the hours of 5 a.m.

and 6 a.m.
(3) The holder of a bottle club license shall not simultaneously hold
another license under the Nebraska Liquor Control Act.
(4) The holder of a bottle club license shall be subject to all provisions of
the Nebraska Liquor Control Act and the rules and regulations adopted
and promulgated under the act that govern the operation of retail licensees
except as otherwise provided in subsection (2) of this section.

275.    Neb. Rev. Stat. § 53-123.01(1) regarding maintaining a list of the members is arbitrary,

under-inclusive, serves no legitimate interest or valid purpose, violates the equal protection and

due process rights of Plaintiffs and their members, invades the privacy of the Plaintiffs and their

members, and is clearly designed to harass, intimidate, harm, and punish Plaintiffs and shut

down the Clubs.

276.    Plaintiffs' members have a right to confidentiality and privacy.  If members are required

to be on a list that can be acquired by the Defendants, law enforcement, or anyone else, they will

not become members of the Clubs.  There is no similar provision for gun clubs, religious clubs,

political clubs, golf clubs, bridge clubs, tennis clubs, or any other clubs or similarly situated

establishment that may have alcohol at their meetings, activities, or assemblies.  There is no

similar requirement for establishments in Nebraska that sell alcohol such as bars and restaurants.

277.    The requirement that Plaintiffs maintain membership lists with private information,

including home addresses, of members, has discouraged new members from joining and current

members from retaining or renewing their memberships.

278.    The requirement that "(2) A bottle club shall not operate on any day between the hours of

5 a.m. and 6 a.m." is unconstitutional as this closing requirement is not imposed upon any other

entity in the State of Nebraska.

279.    The requirement that, "(3) The holder of a bottle club license shall not simultaneously

hold another license under the Nebraska Liquor Control Act" is unconstitutional because this is

49

an arbitrary provision that stops Plaintiffs from obtaining a traditional liquor license for a bar, nightclub or restaurant.

280.    The requirement that, "(4) The holder of a bottle club license shall be subject to all provisions of the Nebraska Liquor Control Act…" is unconstitutional because it puts Plaintiffs private members clubs under the jurisdiction of the Nebraska Liquor Control Commission when no other private clubs are subjected to this interference and regulation.

## SEVENTEENTH CAUSE OF ACTION

### THE BOTTLE CLUB BILL IS NOT GERMANE TO THE MUSIC LICENSING ACT

281.    Article III, § 14 of the Nebraska Constitution, provides in pertinent part: "No bill shall contain more than one subject, and the subject shall be clearly expressed in the title."

282.    The Bottle Club Bill violates Article III, § 14 of the Nebraska Constitution.  The Bottle Club Bill is not clearly expressed in the title of L.B. 1120, which is "Change provisions of the Nebraska Liquor Control Act and music licensing provisions."

283.    L.B. 1120 was nothing more than two completely separate bills, involving two separate subjects, jumbled together at the last minute.

284.    L.B. 1120 contains 39 pages and multiple subjects, including the Bottle Club Bill and Music Licensing Act.  Pages 33 – 39 of L.B. 1120 constitute the "Music License Agency Act," which is an entirely different and completely unrelated subject to the Bottle Club Bill.

285.    The Bottle Club Bill was not included within the initial drafting or reading of L.B. 1120. There was never any notice, hearing, debate, or comment on L.B. 1120 as it related to the Bottle Club Bill.

286.    The initial Bottle Club Bill was 2-pages that was introduced as L.B. 747 on January 3, 2018 and abandoned on or about March 1, 2018.

287. In fact, the request to add the Bottle Club Bill to a sex-trafficking bill was specifically defeated because it would make the commingled bill overly broad and unconstitutional.

288. L.B. 1120 should be declared unconstitutional because it involves more than one subject and the Bottle Club Bill is not clearly expressed in the title.

## EIGHTEENTH CAUSE OF ACTION

### NEB. REV. STAT. § 53.186.01 IS UNCONSTITUTIONAL

### BECAUSE ITS TITLE IS NOT INCLUDED IN LB1120

289. Article III, § 14 of the Nebraska Constitution, provides in pertinent part, "No law shall be amended unless the new act contains the section or sections as amended and the section or sections so amended shall be repealed."

290. L.B. 1120 seeks to codify Neb. Rev. Stat. § 53-186.01, under the title of "Consumption of liquor in public places; license required; exception; violations; penalty." That title is not mentioned in L.B. 1120, nor in the repealed portion of the prior statute.

291. This critical defect by itself renders Neb. Rev. Stat. § 53-186.01 invalid and unconstitutional.

292. Failure to include the statute's title also makes L.B. 1120 ambiguous, overbroad, and arbitrary in its application as the prior statute applied only to "Consumption of liquor in public places."

293. The new title and its planned implementation has a particularly disparate impact upon Plaintiffs because their entire business model is based upon the strict application of Neb. Rev. Stat. § 53-186.01, which specifically states that a liquor license is only required for consumption of liquor in "public places."

294. Since Plaintiffs opened and operate "private" membership clubs that are not open to the

public, they were not required to obtain a liquor license under Neb. Rev. Stat. § 53-186.01.

295.    If L.B. 1120 still only applies to "Consumption of liquor in public places," the addition of "bottle clubs" is irrational, contradictory, and ambiguous as Club Omaha is not open to the public.

296.    If L.B. 1120 was intended to apply to clubs both public and private, Article III, § 14 of the Nebraska Constitution required that the distinction be clearly reflected by including the prior title of the statute with a line through it, indicating the language that was repealed and/or replaced.

## NINETEENTH CAUSE OF ACTION

## EQUITABLE RELIEF AND DAMAGES

## REGULATING PRIVATE CLUBS AS PUBLIC BARS IS UNCONSTITUTIONAL

297.    Club Omaha holds private events on private property and may not be regulated in the same manner as public bars that are open to the public.

298.    Defendants have criminally trespassed upon the property at Club Omaha without a warrant on at least two separate occasions.

299.    The 21st Amendment does not give the Defendants a sword to violate all of Plaintiffs' constitutional rights.

300.    The mere presence of alcohol in Club Omaha does not give Defendants the right to violate Plaintiffs' constitutional rights.

301.    Alcohol is consumed on private property in homes throughout Nebraska where the Nebraska Liquor Control Commission has no power or control to regulate.

302.    Alcohol is consumed in Defendants' Churches and country clubs without the regulation of the Nebraska Liquor Control Commission.

303.   Club Omaha is not prone to the problems occurring at typical bars and clubs in Nebraska where patrons' names and identities are unknown and they are subjected to less rigorous accountability for their actions.

304.   Prior to being allowed access to membership benefits, Plaintiffs' members must sign an express, written contract agreeing to abide by rules of conduct and acknowledging that drugs, prostitution, and all other illegal activities are strictly prohibited.

305.   Plaintiffs' members provide a copy of their identification in front of high definition security cameras.

306.   Club Omaha utilizes several high definition security cameras throughout the inside and outside of the properties, along with a trained security staff.

307.   Quite contrary to creating a public or private nuisance or posing a danger to the community, Club Omaha offers a service that reduces negative secondary effects, especially prostitution.

308.   The Clubs have had a positive impact on their communities and have helped to reduce crime in the surrounding areas of all four Clubs.

309.   Plaintiffs monitor members for levels of intoxication and cut off members if they appear or may be on the verge of over-intoxication.

310.   Plaintiffs take a more active role in assisting members than do entities with liquor licenses, who are open to the public.

311.   Plaintiffs coordinate rides for members and provide taxi cabs, Ubers, and carpools to ensure that members get home safely.

312.   Plaintiffs provide the female entertainers with a security escort to their cars to ensure their safety.

313.    Unlike liquor licensed establishments that make more money the more patrons drink, Plaintiffs have no incentive for members to consume alcohol or drink excessively.

314.    Defendants have no evidence establishing that Club Omaha poses a problem, danger, or nuisance, nor have they identified a legitimate interest behind the implementation of the Bottle Club Laws.

315.    Defendants have furnished no evidence establishing why current local regulations are insufficient or why expansive and invasive regulation is reasonable or necessary.

316.    Defendants do not have the constitutional authority to regulate consumption of alcohol on private property that is incidental to the main course of business.

317.    The Bottle Club Laws and Good Neighbor Nuisance Ordinance are premised upon Defendants' religious and moral objections to the activities that occur at Club Omaha, not for any legitimate interest or safety reasons.

## TWENTIETH CAUSE OF ACTION

### UNLAWFUL TAKING UNDER FIFTH AND FOURTEENTH AMENDMENTS

318.    The Fifth Amendment to the Constitution of the United States reads, in pertinent part, "nor shall private property be taken for public use, without just compensation."

319.    Neb. Const. Art. I, § 21, provides, "The property of no person shall be taken or damaged for public use without just compensation therefor."

320.    Plaintiffs entered a 3-year lease for the property and building located at 7301 Farnam Street, Omaha, Nebraska for the purpose of operating Club Omaha after obtaining permission from all relevant authorities, including the Omaha City Attorney's Office, the Omaha Building Inspector, and all divisions of the Omaha Building Department from electrical to plumbing.

321.    By targeting Plaintiffs' businesses for discrimination, Defendants have deprived Plaintiffs

54

of the commercial benefit of their property.

322.    Plaintiffs sold Paradise City and closed Midwest Girls Club in Hastings and Grand Island because of L.B. 1120.

323.    Since July 19, 2018, when the Bottle Club Bill took effect, Plaintiffs can no longer operate Club Omaha with nude dancing and BYOB as they have since opening in March 2017.

324.    Gross revenue at Club Omaha has significantly decreased since July 19, 2018.

325.    The City of Omaha's Bottle Club law is effective on or about August 15, 2018.

326.    Thousands of potential members of the Clubs have been discouraged from joining Club Omaha due to Defendants' conduct and the passage of the Bottle Club Bill.

327.    Thousands of members of Plaintiffs' Club Omaha have been discouraged from purchasing a full year membership or VIP Gold membership due to Defendants' conduct and the passage of the Bottle Club Bill.

328.    Plaintiffs will lose more or all of their current members and revenue if the Bottle Club Laws are allowed to be enforced against Plaintiffs.

329.    The State of Nebraska possesses the power of eminent domain.

330.    The State of Nebraska has failed to institute condemnation proceedings.

331.    Defendants' actions constitute an effective and inverse taking and damage to the Plaintiffs' property and related property rights and interests for which no compensation has been provided.

332.    Under the circumstances, Defendants should be required to provide just compensation to the Plaintiffs for the property and/or property rights effectively taken, damaged, and/or diminished.

333.    Furthermore, Plaintiffs request permission to maintain the status quo at Club Omaha and continue operations under current rules until March 30, 2020, when their lease at their current location expires.

## DEMAND FOR JURY TRIAL

334.    Plaintiffs hereby demand trial by jury on all claims so triable.

335.    Pursuant to United States District Court of Nebraska Local Rule 40.1(b), Plaintiffs request the trial be held in Omaha, Nebraska.

## PRAYER FOR RELIEF

Plaintiffs pray for the following relief:

A) A judgment against Defendants, jointly and severally, for all statutory damages, past, present, and future general and special damages in the amount of $5,000,000 and punitive damages in the amount of $10,000,000;

B) A TRO, injunction, and declaratory judgment maintaining the status quo at Club Omaha until the expiration of their lease on March 30, 2020;

C) A TRO, injunction, and declaratory judgment declaring what minimum attire Plaintiffs must wear while assembling publicly in the City of Omaha;

D) A TRO, injunction, and declaratory judgment enjoining Defendants from interfering with Plaintiffs public assembly in the City of Omaha.

E) A TRO, injunction, and declaratory judgment against the Defendants declaring L.B. 1120 unconstitutional, both on their face and as applied to Plaintiffs.

F) A TRO, injunction, and declaratory judgment against the Defendants declaring the City of Omaha's Bottle Club Ordinance unconstitutional, both on its face and as applied to Plaintiffs.

G) A TRO, injunction, and declaratory judgment against the Defendants declaring that
Club Omaha is not a Bottle Club, pursuant to Neb. Rev. Stat. § 53-103.47, and that
the Bottle Club Laws are not applicable to and may not be enforced against Plaintiffs.

H) A TRO and an order permanently enjoining and restraining Defendants from acting
pursuant to or enforcing L.B. 1120 and the City of Omaha's Bottle Club Ordinance.

I) A TRO, injunction, and declaratory judgment enjoining and restraining Defendants
from further violating the rights of or discriminating against Plaintiffs.

J) A TRO, injunction, and declaratory judgment temporarily and permanently enjoining
and restraining Defendants from entering Plaintiffs' property at 7301 Farnam Street,
Omaha, Nebraska, without a warrant.

K) Attorneys' fees, appraisal fees, interest, and costs as may be allowed by law.

L) Such other and further relief as is just and necessary.

Respectfully Submitted,

August 13, 2018

By: /s/ Evan Spencer
Evan Spencer
Attorney at Law
305 Broadway, 7th Floor
New York, NY   10007
Tel. 917.547.4665
Evan@EvanSpencerEsq.com
ATTORNEY FOR PLAINTIFFS