# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

SHANE HARRINGTON, H & S CLUB
OMAHA, INC., MELTECH, INC., and
MIDWEST GIRLS CLUB,

              **Plaintiffs,**

      vs.

SUSAN STRONG, PETE RICKETTS,
THERESA THIBODEAU, PATTY
PANSING BROOKS, DOUG PETERSON,
HOBERT RUPE, ROBERT BATT, JOHN
BOLDUC, BRENDA KONFRST, JEAN
STOTHERT, TODD SCHMADERER, KEN
KANGER, MICHELLE BANG, COLENE
HINCHY, PAUL KRATZ, AIMEE
MELTON, CHRIS JERRAM,  JOHN AND
JANE DOE NEBRASKA STATE PATROL
OFFICERS #1-#800, In Their Individual
Capacities and Official Capacities as
Employees of the State of Nebraska;
THE CITY OF OMAHA NEBRASKA,
JOHN DOE OMAHA BUILDING
INSPECTORS #1 AND #2,  JOHN DOE
OMAHA POLICE OFFICERS #1 - #9, In
Their Individual Capacities and Official
Capacities as Employees of the City of
Omaha Nebraska;  JOHN AND JANE
DOE OMAHA POLICE OFFICERS #1 -
#900, In Their Individual Capacities and
Official Capacities as Employees of the
City of Omaha Nebraska; CAROL
BLOOD, WILLIAM ACOSTA-TREJO, and
FENDER, Omaha Police Officer;

              **Defendants.**

8:18CV383

**MEMORANDUM AND ORDER**

       This matter is before the Court on the Amended Motion to Dismiss, ECF No. 57,

filed by Defendants Michelle Bang, Colene Hinchy, Chris Jerram, Ken Kanger, Paul Kratz,

Aimee Melton, Todd Schmaderer, Jean Stothert, William Acosta-Trejo, Fender, and the City of Omaha (collectively, the City Defendants). Also before the Court is the Motion to Dismiss, ECF No. 59, filed by Defendants Robert Batt, Carol Blood, John Bolduc, Patty Pansing Brooks, Brenda Konfrst, Doug Perterson, Pete Ricketts, Hobert Rupe, Susan Strong, and Theresa Thibodeau (collectively, the State Defendants). For the reasons stated below, the Motions will be granted.

## BACKGROUND

The following facts are those alleged in the Amended Complaint, ECF No. 54, and assumed true for purposes of the pending motions to dismiss.[1]

Plaintiff Shane Harrington is a resident of Omaha, Nebraska, and the principal officer of Plaintiffs H & S Club Omaha, Inc., Midwest Girls Club, and Meltech, Inc., which are Nebraska corporations. In March 2017, H&S Club Omaha, Inc., executed a three-year lease for the property at 7301 Farnam Street in Omaha and opened a private-member establishment called Club Omaha. Club Omaha offers live nude dancing as its primary form of entertainment, and although Club Omaha never sold or otherwise provided alcohol to its members, it permitted members to bring in their own alcohol for consumption prior to the enactment of the legislation described below. Club Omaha's membership includes persons under the age of twenty-one. Plaintiffs Midwest Girls Club

---

[1] The Court may also rely on the record created as a result of Plaintiffs' Motion for Temporary Restraining Order, ECF No. 5. *See Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 931 (8th Cir. 2012) (stating "we recite the following facts according to the allegations in the pleadings, including . . . the record created as a result of [the plaintiff's] motion for temporary restraining order, preliminary injunction, and expedited discovery").

and Meltech, Inc., separately owned and operated similar establishments in other Nebraska municipalities outside of Omaha, but those clubs are no longer in operation.

Before H&S Club Omaha, Inc., executed its lease in March 2017, Plaintiffs' counsel exchanged emails with the Omaha City Attorney's office regarding state and local laws applicable to "sexually oriented business[es]" and businesses which permit customers to bring in their own alcohol for consumption. *Id.* at ¶ 2, Page ID 279. Plaintiffs alleged that in these email communications, City Defendants Paul Kratz, the Omaha City Attorney, and William Acosta-Trejo, an Assistant City Attorney, "gave Plaintiffs consent to open Club Omaha[.]" *Id.* (alleging email communications occurred on October 25, 2016, October 31, 2016, and January 30, 2017, and alleging the content of the October 31, 2016, email).

On April 18, 2018, the Nebraska Legislature passed L.B. 1120, which amended the Nebraska Liquor Control Act (NLCA), Neb. Rev. Stat. § 53-101 to § 53-1,122, and included new licensure requirements and regulations for "bottle clubs." Neb. Laws L.B. 1120,106th Leg. Second Reg. Sess. (2018). A bottle club is any "operation . . . keeping and maintaining premises where persons who have made their own purchases of alcoholic liquor congregate for the express purpose of consuming alcoholic liquor upon the payment of a fee or other consideration." Neb. Rev. Stat. § 53-103.47. Plaintiffs filed a complaint in the District Court for Lancaster County, Nebraska, on July 3, 2018, and sought to enjoin enforcement of L.B. 1120, which took effect on July 19, 2018. Plaintiffs claimed L.B. 1120 violated several provisions of the U.S. and Nebraska Constitutions and

that Club Omaha did not constitute a bottle club. The Lancaster County District Court[2] (State Court) dismissed Plaintiffs' amended complaint on July 18, 2018, finding Plaintiffs' claims against the State of Nebraska were barred by Eleventh Amendment sovereign immunity and that their claims for declaratory and injunctive relief failed to state claims for relief.[3] Plaintiffs appealed the State Court's judgment to the Nebraska Court of Appeals, and that appeal is currently pending.

On August 14, 2018, the Omaha City Council passed Ordinance #41532 (the Bottle Club Ordinance), which amended several sections[4] of Chapter 15 of the Omaha Municipal Code—titled Liquors—to make those sections applicable to bottle clubs, specifically. Omaha, NE, Municipal Code § 15-1 *et seq.* As amended by the Bottle Club Ordinance, § 15-42 permits, but does not require, the city council to revoke a bottle club license if the licensee offers live nude dancing on the licensed premises. Previously, on May 16, 2017, the Omaha City Council also passed Ordinance #41153 (the Nuisance Ordinance), which amended §§ 18-90 and 18-91 of Chapter 18 of the Omaha Municipal Code—titled Nuisances—to make them applicable to businesses "where alcoholic liquor is served or consumed while viewing either a live or video performance . . . ." Section 18-91 requires such businesses, as well as those engaged in the retail sale of alcoholic liquors, to comply with listed "nuisance prevention standards." Omaha, NE, Municipal Code § 18-91(a). Accordingly, the effect of the Bottle Club Ordinance and the Nuisance

---

[2] The Honorable Susan Strong, Third District Court, Lancaster County, Nebraska.

[3] The Court takes judicial notice of the State Court's Order and has attached a copy to this Memorandum and Order. *See* Attach. State Ct. Order.

[4] Specifically, §§ 15-2, 15-9, 15-15, 15-22, 15-33, 15-34, 15-40, 15-41, 15-42, 15-44, 15-53, and 15-44 of the Omaha Municipal Code.

Ordinance (collectively, the Ordinances) was to expand the application of certain, already-existing sections of Chapter 15 and Chapter 18 of the Omaha Municipal Code to bottle clubs and businesses where alcoholic liquor is served or consumed by patrons viewing either a live or video performance.

On July 21, 2018, Harrington and four women stood at the intersection of 72nd and Dodge Streets in Omaha holding signs that read "Honk if you [heart] boobs." The women wore only flesh-colored g-strings and areola pasties, and Harrington wore only underwear. They engaged in this conduct to protest state and municipal laws regulating Club Omaha's business. Police officers with the Omaha Police Department (OPD) arrived at the scene and Defendant Fender, an OPD officer, explained to Harrington that "our command is possibly looking at citing everyone that is involved in this for lewd conduct and indecent exposure . . . If our Command says to do it we're going to do it." Am. Compl. ¶ 86, ECF No. 54, Page ID 289. Harrington and the other four protesters stopped protesting and walked back to Club Omaha. Fender and other unnamed OPD officers followed Harrington and the women back to Club Omaha, "walked up the entry stairs of [the] Club Omaha [building], opened the outer door, and occupied the curtilage of the building." *Id.* ¶ 101, Page ID 291. One or more persons inside the club told the officers they were trespassing and asked them to leave, but the officers "held the exterior door of [the] club open with their boots while they [ ] interrogated the manager on duty and searched the curtilage of the property and the interior of the building from the open entrance door." *Id.* ¶ 104. The officers also "demanded entry for the purpose of 'copying everyone's I.D.'" *Id.* ¶ 102.

Three days later, on July 24, 2018, the Omaha City Prosecutor issued a statement, published in the Omaha World-Herald newspaper, concluding that the conduct of Harrington and the four women did not violate any municipal laws.

On August 13, 2018, Plaintiffs filed their Complaint with this Court, ECF No. 1, and, the next day, they filed a Motion for Preliminary Injunction and Temporary Restraining Order, ECF No. 5. The Court denied that Motion, Mem. and Order, ECF No. 33, and on October 9, 2018, Plaintiffs filed an Amended Complaint, ECF No. 54, which enumerated twenty separate causes of action under federal and Nebraska state law.[5] The State Defendants and the City Defendants now move to dismiss the claims against them under Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## STANDARDS OF REVIEW

### Lack of Subject-Matter Jurisdiction—Fed. R. Civ. P. 12(b)(1)

"In order to properly dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), the complaint must be successfully challenged on its face or on the factual truthfulness of its averments." *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993) (*Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990)). "In a facial challenge to jurisdiction, the court presumes all of the factual allegations concerning jurisdiction to be true and will grant the motion only if the plaintiff fails to allege an element necessary for subject matter jurisdiction." *Young Am. Corp. v. Affiliated Comput. Servs.,* 424 F.3d 840,

---

[5] District courts in the Eighth Circuit, including this Court, have "criticized the filing of 'kitchen sink' or 'shotgun' complaints—complaints in which a plaintiff brings every conceivable claim against every conceivable defendant." *Gurman v. Metro Hous. and Redevelopment Auth.*, 842 F. Supp. 2d 1151, 1153 (D. Minn. 2011). "It is the plaintiff's burden, under both Rule 8 and Rule 11, to reasonably investigate their claims, to research the relevant law, to plead only viable claims, and to plead those claims concisely and clearly, so that a defendant can readily respond to them and a court can readily resolve them." *Id.*

843-44 (8th Cir. 2005) (citing *Titus*, 4 F.3d at 593). In a factual challenge to jurisdiction, "there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Osborn*, 918 F.2d at 730. "In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Iowa League of Cities v. EPA*, 711 F.3d 844, 861 (8th Cir. 2013) (citing *Osborn*, 918 F.2d 724, 730). The plaintiff has the burden of proving jurisdiction exists; "[h]owever, the 'heavy' burden of proving mootness falls on the party asserting the case has become moot." *Kennedy Bldg. Assocs. v. Viacom, Inc.*, 375 F.3d 731, 745 (8th Cir. 2004) (citing *Cty. of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979)). "Once the evidence is submitted, the district court must decide the jurisdictional issue, not simply rule that there is or is not enough evidence to have a trial on the issue." *Osborn*, 918 F.2d at 730.

**Failure to State a Claim—Fed. R. Civ. P. 12(b)(6)**

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To satisfy this requirement, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Corrado v. Life Inv'rs Ins. Co. of Am.*, 804 F.3d 915, 917 (8th Cir. 2015) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not

suffice." *Zink v. Lombardi*, 783 F.3d 1089, 1098 (8th Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678), *cert. denied*, 135 S. Ct. 2941 (2015). The complaint's factual allegations must be "sufficient to 'raise a right to relief above the speculative level.'" *McDonough v. Anoka Cty.*, 799 F.3d 931, 946 (8th Cir. 2015) (quoting *Twombly*, 550 U.S. at 555). The Court must accept factual allegations as true, but it is not required to accept any "legal conclusion couched as a factual allegation." *Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 373 (8th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 678). Thus, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ash v. Anderson Merchandisers, LLC*, 799 F.3d 957, 960 (8th Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678), *cert. denied*, 136 S. Ct. 804 (2016).

On a motion to dismiss, courts must rule "on the assumption that all the allegations in the complaint are true," and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 555, 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Mickelson v. Cty. of Ramsey*, 823 F.3d 918, 923 (8th Cir. 2016) (alteration in original) (quoting *Iqbal*, 556 U.S. at 679).

## DISCUSSION

### I. State Defendants' Motion to Dismiss

Each of Plaintiffs' claims against the State Defendants will be dismissed under either Rule 12(b)(1) for lack of subject-matter jurisdiction or Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

## A. Eleventh Amendment Sovereign Immunity

The Amended Complaint enumerates twenty causes of action, sixteen of which are asserted against one or more of the State Defendants who are Nebraska state government officials. As such, the Court will first address the threshold issue of state sovereign immunity under the Eleventh Amendment.

"Under the Eleventh Amendment and constitutional principles of sovereign immunity, 'an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another state.'" *Fryberger v. Univ. or Ark.*, 889 F.3d 471, 473 (8th Cir. 2018) (quoting *Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 304 (1990)). "Congress can abrogate sovereign immunity, like it has for claims filed pursuant to 42 U.S.C. § 1983,[6] or states can waive sovereign immunity, but in the absence of such abrogation or waiver, sovereign immunity bars all suits." *Montin v. Moore*, 846 F.3d 289, 292-93 (8th Cir. 2017). Plaintiffs may also seek prospective injunctive relief "in federal court from state officials sued in their official capacities, notwithstanding the state's sovereign immunity, under *Ex Parte Young*, 209 U.S. 123, [ ] (1908)." *Bennie v. Munn*, 822 F.3d 392, 397 (8th Cir. 2016). The *Ex Parte Young* exception to state sovereign immunity is not, however, applicable "to suits brought against state officials alleging violations of *state* law." *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 439 (2004) (emphasis added) (citing *Pennhurst State Sch. and Hosp. v. Halderman*, 465 U.S. 89, 106 (1984)); *see also Greene v. Dayton*, 806 F.3d 1146, 1150 (8th Cir. 2015)

---

[6] However, "a State is not a 'person' against whom a § 1983 claim for money damages might be asserted." *Lapides v. Bd. of Regents of Univ. Sys. of Georgia*, 535 U.S. 613 (2002).

("[F]ederal courts are unable to order state officials to conform their conduct to state law.")
(citing *Pennhurst*, 465 U.S. at 106)).

### 1. Tort Claims

In their Fourth Cause of Action, Plaintiffs claim Defendants Thibodeau, Brooks, and Blood, each Nebraska State Senators, "defamed Harrington on 3/28/18, with actual malice, on the Nebraska Senate Floor during a hearing regarding LB 1132 in violation of [Neb. Rev. Stat.] § 25-839." Am. Compl. ¶ 127, ECF No. 54, Page ID 293. In their Sixth Cause of Action, Plaintiffs claim the same senators placed Harrington in a false light with certain statements made on the Nebraska Senate Floor on 3/28/18. *Id.* at ¶ 135, Page ID 296. In their Twentieth Cause of Action, Plaintiffs claim, in part, Defendant Ricketts, the Governor of Nebraska, negligently hired Senator Thibodeau and negligently appointed Judge Strong to the Lancaster County District Court. *Id.* at ¶ 260-61, Page ID 314. Because the alleged acts or omissions that are the bases for these claims occurred in the scope of state employment, the claims are against Thibodeau, Brooks, Blood, and Ricketts in their official capacities.[7] *Montin*, 846 F.3d at 292-93 (citing *Bohl v. Buffalo Cty.*, 557 N.W.2d 668, 673 (Neb. 1997)).

Plaintiffs' false-light claim is based on the same statements and comments which are the basis of their defamation claim. The false-light claim is, therefore, subsumed within the defamation claim,[8] *Moats v. Republican Party of Neb.*, 796 N.W.2d 584, 598

---

[7] Even if the Court were to consider Plaintiffs' defamation and false-light claims against Thibodeau, Brooks, and Blood in their individual capacities, they would be entitled to legislative immunity. *See Young v. Mercer Cty. Comm'n*, 849 F.3d 728, 733 (8th Cir. 2017); *Buckley v. Ray*, 848 F.3d 855, 865 (8th Cir. 2017) (involving defamation claim).

[8] Even if the false-light claim were not subsumed by the defamation claim, the Court still would lack subject-matter jurisdiction over that claim pursuant to the Nebraska State Tort Claims Act, Neb. Rev. Stat.

(Neb. 2011), and "[i]t is clear that the State [of Nebraska] has not waived its sovereign immunity with respect to claims against its officers and employees who, while acting in the scope of their duties, are alleged to have committed libel[ ] [or] slander[.]" *Bojanski v. Foley*, 798 N.W.2d 134, 144 (Neb. Ct. App. 2011) (citing Neb. Rev. Stat. § 81-8,219(4)). As such, Plaintiffs' Fourth and Sixth Causes of Action will be dismissed, without prejudice, for lack of subject-matter jurisdiction. *Lors v. Dean*, 746 F.3d 857, 861 (8th Cir. 2014) ("sovereign immunity . . . is a jurisdictional threshold matter) (internal quotation omitted) (alteration in original).

Plaintiffs' negligence claim against Ricketts is similarly barred by sovereign immunity unless Nebraska waived its immunity. But, even if it had, Plaintiffs failed to comply with the Nebraska State Tort Claims Act (NSTCA) when they brought this claim in federal court. *See Montin*, 846 F.3d at 292-93 (citing Neb. Rev. Stat. § 81-8,214 (requiring all claims under Nebraska's State Tort Claims Act be brought in state district court)). Thus, under either the Eleventh Amendment or the NSTCA, this Court lacks subject-matter jurisdiction over Plaintiffs' Twentieth Cause of Action, as asserted against Defendant Ricketts, and it will be dismissed to that extent, without prejudice. *See id.*

### 2. Other State-Law Claims

Plaintiffs' Third,[9] Eighteenth, and Nineteenth Causes of Action seek declaratory and injunctive relief based exclusively on the interpretation of a Nebraska state statute—

---

§ 81-8,209 *et seq.* The Nebraska Court of Appeals has held that the tort of invasion of privacy, which includes false-light claims, is not exempted from the Nebraska State Tort Claims Act, *Bojanski*, 798 N.W.2d at 144, but such claims may only be brought in a Nebraska state district court. *Montin*, 846 F.3d at 292 (quoting Neb. Rev. Stat. § 81-8,214).

[9] Even if the Court had subject-matter jurisdiction over this claim, as asserted against the State of Nebraska, it is barred by the doctrine of issue preclusion. *See infra* Section II.A.3. (dismissing this cause of action, as asserted against the City of Omaha, under the doctrine of issue preclusion).

Third Cause of Action—or on allegations that certain provisions of the NLCA violate Nebraska's constitution—Eighteenth and Nineteenth Causes of Action. Thus, these claims are barred by Eleventh Amendment sovereign immunity and will be dismissed, without prejudice, for lack of subject-matter jurisdiction. *See McDaniel v. Precythe*, 897 F.3d 946, 952 (8th Cir. 2018) (quoting *Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) ("In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of *federal* law and seeks relief properly characterized as prospective.") (emphasis added)).

Plaintiffs' Tenth, Twelfth, Thirteenth, Fourteenth, Fifteenth, Sixteenth, and Seventeenth Causes of Action all seek, in part, declaratory and injunctive relief based on claims that various provisions of the NLCA violate both the U.S. and Nebraska constitutions. Under Eleventh Amendment sovereign immunity, the Court lacks subject-matter jurisdiction over these claims to the extent they are based on violations of state law. *McDaniel*, 897 F.3d at 952; *see also Greene*, 806 F.3d at 1150 (citing *Pennhurst*, 465 U.S. at 106). Accordingly, those aspects of Plaintiffs' Tenth, Twelfth, Thirteenth, Fourteenth, Fifteenth, Sixteenth, and Seventeenth Causes of Action which seek equitable relief based on an allegation that the NLCA violates Nebraska state law will be dismissed, without prejudice. They will also be dismissed, without prejudice, to the extent they seek money damages. *See Coleman v. Court of Appeals of Md.*, 566 U.S. 30, 35 (2012); *Yamaha Motor Corp., U.S.A. v. Stroud*, 179 F.3d 598, 603-04 (8th Cir. 1999).

**B. The *Rooker-Feldman* Doctrine**

Plaintiffs previously pursued many of their claims against some of the State Defendants in state court and received an unfavorable judgment prior to initiating this federal action. *See* Attach. State Ct. Order. Their Seventh Cause of Action requests "a declaratory judgment enjoining Defendants from enforcing [the State Court's judgment] against Plaintiffs and monetary and punitive damages against [Judge] Strong in her individual capacity." Am. Compl. ¶ 155, ECF No. 54, Page ID 302. Under the *Rooker-Feldman* doctrine, the Court lacks subject-matter jurisdiction over this cause of action. *See generally King v. City of Crestwood*, 899 F.3d 643, 647 (8th Cir. 2018); 18B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 4469.1 (2d ed.).[10]

"The *Rooker-Feldman* doctrine 'recognizes that, with the exception of habeas corpus petitions, lower federal courts lack subject matter jurisdiction over challenges to state court judgments.'" *King*, 899 F.3d at 647 (quoting *Lemonds v. St. Louis Cty.*, 222 F.3d 488, 492 (8th Cir. 2000)). This doctrine is narrow and "confined to 'cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" *Shelby Cty. Health Care Corp. v. S. Farm Bureau Cas. Ins. Co.*, 855 F.3d 836, 840 (8th Cir. 2017) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)).

Plaintiffs lost their state-court action, and, with this claim, they complain of injuries caused by the State Court's judgment, which was rendered before this federal action commenced. They invite this court to review and reject that judgment. This claim is,

---

[10] The State Defendants specifically raised this issue in their motion brief and Plaintiffs did not address it in their response.

therefore, one of the few claims that falls within the narrow confines of the *Rooker-Feldman* doctrine, and the Court will dismiss it, without prejudice, for lack of subject-matter jurisdiction. *Shelby Cty. Health Care Corp.*, 855 F.3d at 840 (quoting *Exxon Mobil Corp.*, 544 U.S. at 284).

Further, Judge Strong is entitled to judicial immunity with respect to any claims against her in her individual capacity because none of her judicial actions was taken in the complete absence of all jurisdiction. *See Woodworth v. Hulshof*, 891 F.3d 1083, 1091 (8th Cir. 2018) (quoting *Schottel v. Young*, 687 F.3d 370, 373 (8th Cir. 2012)); *Penn v. United States*, 335 F.3d 786, 789 (8th Cir. 2003).

### C. Res Judicata—Claim Preclusion

As asserted against the State Defendants, Plaintiffs' Tenth, Twelfth, Thirteenth, Fourteenth, Fifteenth, Sixteenth, and Seventeenth Causes of Action claim certain aspects of the NLCA violate various provisions of the U.S. and Nebraska Constitutions.[11] The Court need only address these claims insofar as they allege violations of the U.S. Constitution. *See supra* Section I.A.2. (finding the Court lacks subject-matter jurisdiction over these claims to the extent they allege violations of the Nebraska Constitution).

"By enacting the Full Faith and Credit Statute, 28 U.S.C. § 1738, 'Congress has specifically required all federal courts to give preclusive effect to state-court judgments

---

[11] As asserted against the State Defendants, Plaintiffs' Tenth Cause of Action claims Neb. Rev. Stat. § 53-103.47 (defining a "bottle club") violates the U.S. Constitution; their Twelfth Cause of Action claims the NLCA, broadly, violates the First Amendment to the U.S. Constitution; their Thirteenth Cause of Action claims certain provisions of the NLCA violate the Equal Protection Clauses of the U.S. and Nebraska constitutions; their Fourteenth Cause of Action claims the NLCA violates the Contracts Clauses of the U.S. and Nebraska constitutions; their Fifteenth Cause of Action claims the NLCA violates the Bill of Attainder Clauses of the U.S. and Nebraska constitutions; their Sixteenth Cause of Action claims the NLCA violates the Establishment Clause of the First Amendment to the U.S. Constitution; and their Seventeenth Cause of Action claims Neb. Rev. Stat. § 53-123.08 violates several provisions the U.S. and Nebraska Constitutions.

whenever the courts of the State from which the judgments emerged would do so.'" *Laase v. Cty of Isanti*, 638 F.3d 853, 856 (8th Cir. 2011) (quoting *Allen v. McCurry*, 449 U.S. 90, 96 (1980)). "The law of the forum that rendered the first judgment controls the res judicata analysis." *Id.* (quoting *St. Paul Fire and Marine Ins. Co. v. Compaq Comput. Corp.*, 539 F.3d 809, 821 (8th Cir. 2008)). The State Court previously rendered a judgment on several claims which the Plaintiffs reassert in this action, and, "[u]nder Nebraska law, claim preclusion[12] bars relitigation of any right, fact, or matter directly addressed or necessarily included in a former adjudication if (1) the former judgment was rendered by a court of competent jurisdiction, (2) the former judgment was a final judgment, (3) the former judgment was on the merits, and (4) the same parties or their privies were involved in both actions." *Hill v. AMMC, Inc.*, 915 N.W.2d 29, 33 (Neb. 2018). "The doctrine bars relitigation not only of those matters actually litigated, but also of those matters which might have been litigated in the prior action." *Fetherkile v. Fetherkile*, 907 N.W.2d 275, 286 (Neb. 2018).

In their prior state-court action, Plaintiffs specifically asserted ten separate claims that certain aspects of the NLCA violated various provisions of the U.S. and Nebraska Constitutions, many of which are reasserted in this action. *Compare* Attach. State Ct. Order, *with* Am. Compl., ECF No. 54 (asserting several of the same constitutional challenges to the NLCA). To the extent those ten claims sought declaratory and injunctive relief against state officials, in their official capacities, the State Court dismissed them for

---

[12] "In the past, [the Nebraska Supreme Court has] referred to claim preclusion and issue preclusion as res judicata and collateral estoppel. Courts and commentators have moved away from that terminology and now use the terms claim preclusion and issue preclusion." *Hara v. Reichert*, 843 N.W.2d 812, 816 (Neb. 2014).

failure to state a claim upon which relief can be granted. *See Calzone v. Hawley*, 866 F.3d 866, 869 (8th Cir. 2017) ("A suit for injunctive or declaratory relief avoids [Eleventh Amendment] immunity if the [state] official has some connection to the enforcement of the challenged laws.").[13] To the extent those claims sought relief against the State of Nebraska and its agencies, including money damages against state officials in their official capacities, the State Court expressly dismissed those claims under the Eleventh Amendment for lack of subject-matter jurisdiction. *See id.* Plaintiffs appealed the State Court's judgment to the Nebraska Court of Appeals, and that appeal is currently pending.

Thus, the State Court rendered a final judgment on the merits with respect to the ten claims which challenged the constitutionality of the NLCA and sought declaratory and injunctive relief against state officials. See Attach. State Ct. Order., pgs. 5-21 (enumerating ten constitutional claims and dismissing each for failure to state a claim); *Riddle v. CharterWest Bank*, 8:18-CV-17, 2018 WL 2120390, at *4 (D. Neb. May 8, 2018) (citing *Cole v. Clarke*, 641 N.W.2d 412, 416 (Neb. Ct. App. 2002) ("A judgment of

---

[13] In a footnote in its discussion of whether Plaintiffs were entitled to temporary injunctive relief under Nebraska law, the State Court stated that "[t]o the extent Plaintiffs seek to enjoin the individual Defendants from enforcing the [NLCA], Defendants Ricketts [Nebraska Governor], Stenberg [Nebraska Treasurer], Rupe [Executive Director of the NLCC], Batt [Chairman of the NLCC], Gale [Nebraska Secretary of State], and O'Donnell [Clerk of the Nebraska Legislature] do not have the authority to regulate alcoholic liquor or enforce criminal penalties for violations of the NLCA." Attach. State Ct. Order, pg. 23. Whether these government officials have the authority to enforce state legislation is a matter of Nebraska state-law interpretation, and this Court will not review the State Court's conclusions with respect thereto. The State Court was otherwise silent on whether Doug Peterson, the Nebraska Attorney General, had any enforcement authority under the NLCA, and Plaintiffs did not name any Nebraska State Patrol or Omaha Police Department officers as defendants in the state-court action. This Court finds that such individuals have "some connection to the enforcement of [the NLCA]." *Calzone*, 866 F.3d at 869; Neb. Rev. Stat. § 53-1, 110 (permitting "any officer whose duty it is to make arrests" to arrest "with or without a warrant any person or persons found violating the [NLCA]"); *see* Neb. Rev. Stat. §§ 53-1, 100 *et seq.* (criminalizing violations of the NLCA), 84-204 (granting the Attorney General and Department of Justice "the same powers and prerogatives" as "the county attorneys have in their respective counties"), 23-1201 (making it the duty of county attorneys to prosecute violations of Nebraska law).

dismissal based on the failure of a claimant to state a cause of action is considered a judgment on the merits even where by amendments a good cause of action might be stated."). The State Court was also a court of competent jurisdiction, *see* Neb. Rev. Stat. § 24-302, and Plaintiffs' pending appeal does not affect the finality of the State Court's judgment, *Cf. Peterson v. Neb. Nat. Gas Co.*, 281 N.W.2d 525, 527-28 (Neb. 1979); *see also* Restatement (Second) of Judgments § 13 cmt. f (Am. Law Inst. 1982). Further, the Court finds that the parties in this action are either the same or in privity[14] with those in Plaintiffs' prior state-court action.

The Tenth, Twelfth, Thirteenth, Fourteenth, Fifteenth, Sixteenth, and Seventeenth Causes of Action either reassert the same constitutional challenges to the NLCA which were previously asserted in Plaintiffs' state-court action, or they assert a constitutional challenge to the NLCA which could have been asserted in Plaintiffs' state-court action. These claims are, therefore, barred by the doctrine of claim preclusion to the extent they are asserted against the State Defendants for declaratory and injunctive relief, and they will be dismissed, with prejudice, to that extent. These claims will also be dismissed to the extent they seek money damages. *See Coleman*, 566 U.S. at 35; *Stroud*, 179 F.3d at 603-04.

---

[14] The plaintiffs in the state-court action—Shane Harrington, H&S Club Omaha, Inc., MetItech, Inc., and Midwest Girls Club—are the plaintiffs in this action. Pete Ricketts, the Governor of Nebraska; Hobert Rupe, the Executive Director of the NLCC; Robert Batt, the Chairman of the NLCC; and Doug Peterson, the Nebraska Attorney General, were defendants in the state-court action and are defendants in this action. Plaintiffs added several more Nebraska government officials as defendants in this action, including legislators and Nebraska State Patrol personnel. The Court finds that the addition of these party-defendants does not prohibit application of res judicata to these claims (Causes of Action 12, 13, 14, 15, and 18), and Plaintiffs made no argument otherwise. *R.W. v. Schrein*, 642 N.W.2d 505, 511 (Neb. 2002) (stating "[p]rivity requires, at a minimum, a substantial identity between the issues in controversy and [a] showing [that] the parties in the two actions are really and substantially in interest the same").

Plaintiffs' argument that the State Court's judgment was not on the merits because that court lacked subject-matter jurisdiction over the claims fails to distinguish between the claims that were dismissed under the Eleventh Amendment and the claims that were dismissed on the merits. Although a dismissal based on lack of subject-matter jurisdiction is not a judgment on the merits, *Kerndt v. Ronan*, 458 N.W.2d 466, 469-70 (Neb. 1990), the State Court did not find that it lacked subject-matter jurisdiction over the above-mentioned claims entirely. As noted above, the State Court held, under Eleventh Amendment sovereign immunity, that it lacked subject-matter jurisdiction only over the claims against the State of Nebraska and its agencies, including claims for money damages against state officials, in their official capacities. It addressed and dismissed the claims against state officials for declaratory and injunctive relief on the merits. Thus, Plaintiffs' argument fails.

### C.     Federal Statutory Claims

Plaintiffs' Eighth Cause of Action is duplicative, and their Ninth Cause of Action fails to state a plausible claim for relief.

The Eighth Cause of Action is titled "Additional Violations of 42 U.S.C. § 1983" and alleges "Defendants violated the rights of Plaintiffs guaranteed under Federal and State law, including 42 U.S.C. § 1983, the First, Fourth, and Fourteenth Amendment to the U.S. Constitution, Article I, § 3, Article I, § 5, and Article I, § 7 of the Nebraska Constitution[.]" Am. Compl. ¶ 156, ECF No. 54, Page ID 302. This claim is repetitive of Plaintiffs' other, separately enumerated claims; § 1983 does not provide a claim for violations of state law, *Doe v. Gooden*, 214 F.3d 952, 955 (8th Cir. 2000); and, "[s]tanding alone, [§] 1983 does not establish any substantive rights[,]" *Henley v. Brown*, 686 F.3d 634, 640 (8th Cir. 2012).

Plaintiffs' Eighth Cause of Action, as asserted against the State Defendants, will, therefore, be dismissed, without prejudice.

The Ninth Cause of Action alleges the State Defendants conspired to violate Plaintiffs' rights under 42 U.S.C. §§ 1985(2) and (3). To state a conspiracy claim under § 1985, "a plaintiff 'must allege with particularity and specifically demonstrate with material facts that the defendants reached an agreement.'" *Kelly v. City of Omaha*, 813 F.3d 1070, 1077-78 (8th Cir. 2016) (quoting *City of Omaha Emps. Betterment Ass'n v. City of Omaha*, 883 F.2d 650, 652 (8th Cir. 1989)). "This standard requires that 'allegations of a conspiracy be pleaded with sufficient specificity and factual support to suggest a meeting of the minds directed toward an unconstitutional action.'" *Id.* (quoting *Nelson v. City of McGehee*, 876 F.2d 56, 59 (8th Cir. 1989)). Although the Amended Complaint makes many general allegations of a widespread conspiracy, the Court finds that Plaintiffs failed to allege sufficient facts to satisfy this pleading standard and this claim will be dismissed, without prejudice, as asserted against the State Defendants, in their individual capacities. To the extent this claim is asserted against the State Defendants in their official capacities, and thereby against the State of Nebraska, it is dismissed, without prejudice, under Eleventh Amendment sovereign immunity.

## II.    City Defendants' Motion to Dismiss

The Court will dismiss each of Plaintiffs' claims against the City Defendants under either Rule 12(b)(1) or Rule 12(b)(6), as explained below.[15]

---

[15] The Court notes that the City Defendants filed their Amended Motion to Dismiss several hours late. However, given the nature of Plaintiffs' Amended Complaint, *see supra* Note 4, and that the State Defendants were given additional time to file their motion, the Court will consider the City Defendants' Motion and supporting brief.

### A.    Section 1983 Claims

Plaintiffs assert several claims against the City Defendants individually and against the City of Omaha.   To state a claim under § 1983 against the City Defendants individually, Plaintiffs must allege they "act[ed] under the color of state law" and violated "a right secured by the Constitution and laws of the United States."  *Atkinson v. City of Mountain View*, 709 F.3d 1201, 1207 (8th Cir. 2013) (quoting *Cook v. City of Bella Villa*, 582 F.3d 840, 848-49 (8th Cir. 2009)).  To state a claim for municipal liability against the City of Omaha under § 1983, however, Plaintiffs must allege "the violation resulted from (1) an official municipal policy, (2) an unofficial custom, (3) or a deliberately indifferent failure to train or supervise[.]"  *Atkinson*, 709 F.3d at 1214 (internal quotations omitted). Ordinances passed by the Omaha City Council are official municipal policies and a plaintiff may pursue claims against the City of Omaha which seek equitable relief to enjoin their enforcement.  *Johnson v. Douglas Cty. Med. Dep't*, 725 F.3d 825, 828 (8th Cir. 2013) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978)).

### 1.    First Cause of Action

The First Cause of Action seeks damages because Defendant Fender and the unnamed John Doe OPD officers allegedly retaliated against Plaintiffs for exercising their right to free speech during their July 21, 2018, protest.  Plaintiffs did not sufficiently allege a basis for municipal liability, and Harrington is the only plaintiff with standing to assert this claim.  Therefore, the Court will determine whether Harrington stated a plausible claim for damages against Fender and the unnamed John Doe OPD officers, in their individual capacities.

To succeed on a First Amendment retaliation claim, a plaintiff must show three things: "(1) he engaged in protected activity, (2) the government official[s] took adverse action against him that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity." *Bennie v. Munn*, 822 F.3d 392, 397 (8th Cir. 2016) (quoting *Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004)).  Protesting peaceably is a protected activity, *see Cross v. Mokwa*, 547 F.3d 890, 896 (8th Cir. 2008), and, regarding the second element, an adverse action "need not be great in order to be actionable[,]" *Garcia v. City of Trenton*, 348 F.3d 726, 729 (8th Cir. 2003) (internal quotation omitted).  The action may not, however, be "so inconsequential that [ ] allowing a claim 'would trivialize the First Amendment[.]'" *Bennie*, 822 F.3d at 398 n.2 (quoting *Naucke v. City of Park Hills*, 284 F.3d 923, 928 (8th Cir. 2002)).

Harrington alleged that he engaged in a public protest of certain state and local laws regulating Club Omaha's business.  Fender, along with other OPD officers, arrived at the scene, and Fender explained to Harrington that "our command is possibly looking at citing everyone that is involved in this for lewd conduct and indecent exposure . . . [.] If our Command says to do it we're going to do it."  Am. Compl. ¶ 86, ECF No. 86, Page ID 289.  Harrington alleged he immediately stopped protesting.  Three days later, the Omaha City Prosecutor publicly stated that neither Harington's conduct nor any of the other protesters' conduct violated any municipal laws.

Other than the conclusory allegation that all the City Defendants intentionally chilled Harrington's speech because they disapproved of the content of his message, Harrington alleged no facts from which the Court can reasonably infer that Fender's or

any of the other unnamed officer's conduct was motivated, even in part, by a desire to chill Harrington's speech. *See id.* at ¶ 79-94, Page ID 289-90. Harrington has, therefore, failed to state a plausible First Amendment retaliation claim against Fender and the unnamed John Doe OPD officers. This claim will be dismissed, without prejudice.

### 2. Second Cause of Action

The Second Cause of Action asserts two separate unreasonable-search claims under the Fourth Amendment. Because Plaintiffs did not allege a basis for municipal liability, the Court will determine whether Plaintiffs stated a plausible claim against Fender, the other unnamed John Doe OPD officers, and the unnamed John Doe building inspectors, in their individual capacities.

"The Supreme Court has interpreted the Fourth Amendment as proscribing unreasonable searches that intrude upon a person's reasonable expectation of privacy." *Azam v. City of Columbia Heights*, 865 F.3d 980, 989 (8th Cir. 2017) (citing *Bond v. United States*, 529 U.S. 334, 338-39 (2000)). "[A] party asserting a violation of his or her reasonable expectation of privacy must show both 1) 'an actual (subjective) expectation of privacy,' and 2) 'that the expectation [is] one that society is prepared to recognize as 'reasonable.'" *Id.* (quoting *United States v. DE L'Isle*, 825 F.3d 426, 431 (8th Cir. 2016)); *United States v. Lewis*, 864 F.3d 937, 941 (8th Cir. 2017) (quoting *United States v. Russell*, 847 F.3d 616, 618 (8th Cir. 2017)).

Individuals "can have a reasonable expectation of privacy in commercial premises, although that expectation 'is different from, and indeed less than, a similar expectation in an individual's home.'" *Lewis*, 864 F.3d at 941 (quoting *New York v. Burger*, 482 U.S. 691, 700 (1987)). "Even if the general public is not invited onto commercial premises, an

individual's expectation of privacy is not reasonable if he or she would reasonably expect the general public to enter the premises anyway." *Id.* (citing *United States v. Long*, 797 F.3d 558, 565 (8th Cir. 2015)).

Plaintiffs' first claim is that two unnamed City of Omaha building inspectors unreasonably searched Club Omaha. *See* Am. Compl. ¶¶ 95-9, ECF No. 54, Page ID 290-91. They alleged that on March 13, 2017, one building inspector "trespassed upon Plaintiffs' property without permission," *Id.* ¶ 96, and that the other building inspector "entered what is now Club Omaha's registration room without permission or warrant where an illegal search was performed[,]" *Id.* ¶ 99. Club Omaha is a commercial establishment, and, under the Fourth Amendment standard articulated above, these allegations do not demonstrate that either of the unnamed building inspectors conducted a search of an area in which there was a reasonable expectation of privacy. *See Lewis*, 864 F.3d at 941-42; *see generally Burger*, 482 U.S. at 699-703 (discussing administrative searches of "commercial premises in a closely regulated industry").

Plaintiffs' second claim is that Fender and other unnamed OPD officers unreasonably searched Club Omaha following the protest on July 21, 2018. Am. Compl. ¶¶ 100-09, ECF No. 54, Page ID 291. They alleged that Fender and other unnamed OPD officers followed Harrington back to Club Omaha, "walked up the entry stairs of [the] Club Omaha [building], opened the outer door, and occupied the curtilage of the building." *Id.* ¶ 101. The officers "held the exterior door of [Club Omaha] open with their boots while they unlawfully interrogated the manager . . . and searched the curtilage of the property and the interior of the building from the open entrance door." *Id.* ¶ 104. As with the first claim involving the building inspectors, the Court finds these alleged facts do not

demonstrate a search was conducted of an area in which there was reasonable expectation of privacy.  *See Lewis*, 864 F.3d at 941-42.

Thus, Plaintiffs have failed to state a plausible Fourth Amendment claim against Fender, the other unnamed John Doe OPD officers, or the unnamed building inspectors.

### 3.      Third Cause of Action

Plaintiffs' Third Cause of Action seeks a "declaratory judgment that Club Omaha is not a 'Bottle Club[,]" as defined by Neb. Rev. Stat. § 53-103.47, and, thus, an injunction against the application of the City of Omaha's ordinances regulating bottle clubs.  Omaha, NE, Municipal Code §§ 15-1 *et seq.* (regulating bottle clubs).  This claim is barred by the doctrine of issue preclusion, as applied under Nebraska law.[16]

Under Nebraska law,

> [i]ssue preclusion bars the relitigation of a finally determined issue that party had a prior opportunity to fully and fairly litigate.  [It] applies where (1) an identical issue was decided in a prior action, (2) the prior action resulted in a final judgment on the merits, (3) the party against whom the doctrine is to be applied was a party or was in privity with a party to the prior action, and (4) there was an opportunity to fully and fairly litigate the issue in the prior action.

*Hara v. Reichert*, 843 N.W.2d 812, 816 (Neb. 2014).

The same issue—whether Club Omaha constitutes a "bottle club" under Neb Rev. Stat. § 53-103.47—was decided by a final judgment on the merits by the State Court, and that judgment was against the same parties who are plaintiffs in this action.  Attach. State

---

[16] The City Defendants, including the City of Omaha, were not parties to Plaintiffs' prior state-court action, and they are not in privity with the defendants named in that action.  Thus, the doctrine of claim preclusion, as applied under Nebraska law, does not bar this claim against the City Defendants.  *Hara v. Reichert*, 843 N.W.2d 812, 816 (Neb. 2014) ("Claim preclusion [ ] applies only between the parties (or their privies) who were involved in the prior action, while issue preclusion may be used by a nonparty in a later action, either offensively or defensively.").  Rather, it is barred by issue preclusion.

Ct. Order, pg. 21. There is no indication that Plaintiffs were denied a full and fair opportunity to litigate this issue before the State Court. Accordingly, the Court will dismiss Plaintiffs' Third Cause of Action, as asserted against the City Defendants, with prejudice.

### 4. Eighth and Ninth Causes of Action

Plaintiffs' Eighth and Ninth Causes of Action, as asserted against the City Defendants, will be dismissed, in large part, for the same reasons these causes of action were dismissed as asserted against the State Defendants. *See supra* Section I.C. The Eighth Cause of Action is duplicative, and the Ninth Cause of Action, as asserted against the City Defendants in their individual capacities, fails to allege a plausible conspiracy claim under 42 U.S.C. § 1985. Insofar as the Ninth Cause of Action is asserted against the City Defendants in their official capacities, however, that claim will be dismissed pursuant to the intracorporate conspiracy doctrine. *Kelly*, 813 F.3d at 1079 ("Because the City could not conspire with itself through its agents acting within the scope of their employment, [the plaintiff] failed to allege a conspiracy under § 1985.").

### 5. Eleventh Cause of Action

Plaintiffs' Eleventh Cause of Action requests a declaration that § 18-91 of the Omaha Municipal Code, as amended by the Nuisance Ordinance, is unconstitutionally overbroad and vague on its face and an order enjoining its enforcement.[17]

---

[17] Omaha Municipal Code § 18-6 requires the chief of police, among other officials, to enforce § 18-91. Plaintiffs have named Todd Schmaderer, the Chief of Police for the City of Omaha, as a defendant in this action. *Calzone*, 866 F.3d at 869 ("When a plaintiff brings a pre-enforcement challenge to the constitutionality of a particular statutory provision, the causation element of standing requires the named defendants to possess authority to enforce the complained-of provision.").

As an initial matter, the Court notes that "[f]acial challenges are disfavored for several reasons." *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 450 (2008). Among other things, they "often rest on speculation[,]" risk "premature interpretation of statutes on the basis of factually barebones records[,]" and "run contrary to the fundamental principle of judicial restraint that courts should neither anticipate a question of constitutional law in advance of the necessity of deciding it nor formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied." *Id.* (internal quotations omitted).

### a. Overbreadth

"The First Amendment overbreadth doctrine . . . provides an avenue 'whereby a law may be invalidated as overbroad if a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep.'" *Josephine Havlak Photographer, Inc. v. Vill. of Twin Oaks*, 864 F.3d 905, 912 (8th Cir. 2017) (quoting *SOB, Inc. v. City of Benton*, 317 F.3d 856, 864 (8th Cir. 2003)). "For a federal court to entertain a facial challenge pursuant to the First Amendment overbreadth doctrine, [however,] 'there must be a realistic danger that the statute itself will significantly compromise recognized First Amendment protections of parties not before the court.'" *Id.* (quoting *Jacobsen v. Howard*, 109 F.3d 1268, 1274 (8th Cir. 1997)). Otherwise, Article III standing is lacking. *Id.* Plaintiffs bear the burden to allege standing to assert their facial overbreadth claim. *See id.*

The Amended Complaint expressly limited Plaintiffs' First Amendment overbreadth claim to a facial challenge of § 18-91, but they failed to allege the requisite Article III standing to assert that claim. They alleged that § 18-91 is overbroad because it includes

ten undefined terms which "can be applied to virtually anything the City Defendants do not like . . . ." *Id.* at ¶ 170, Page ID 304. Yet, in their Amended Complaint, they made no attempt to allege any realistic scenarios in which § 18-91 would "compromise recognized First Amendment protections of parties not before the court." *Josephine*, 864 F.3d at 912; *see* Am. Compl. ¶¶ 168-75, ECF No. 54, Page ID 304-05. Nor did they address this threshold issue in their opposition brief. Pl.'s Br., ECF No. 61, Page ID 398. Therefore, the Court will dismiss this claim, without prejudice, for lack of standing. *See Josephine*, 864 F.3d at 912 (quoting *Wash. State Grange*, 552 U.S. at 449 n.6 ("We generally do not apply the strong medicine of overbreadth analysis where the parties fail to describe the instances of arguable overbreadth of the contested law.")).

### b.  Vagueness

"The void-for-vagueness doctrine is embodied in the due process clauses of the fifth and fourteenth amendments." *Woodis v. Westark Cmty. Coll.*, 160 F.3d 435, 438 (8th Cir. 1998) (quoting *D.C. v. City of St. Louis*, 795 F.2d 652, 653 (8th Cir. 1986)). A law is unconstitutionally vague "if it 'fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement.'" *Weed v. Jenkins*, 873 F.3d 1023, 1030 (8th Cir. 2017) (quoting *Musser v. Mapes*, 718 F.3d 996, 1000 (8th Cir. 2013)). "[V]agueness concerns are especially pressing" in the First Amendment free speech context, *Duhe v. City of Little Rock*, 902 F.3d 858, 863-64 (8th Cir. 2018), but the Supreme Court has "expressed greater tolerance" for economic regulations and laws "with civil rather than criminal penalties . . . ." *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498-99 (1982); *see also City of Chicago v. Morales*, 527 U.S. 41, 55 (1999)

(citing *Id*.). The Supreme Court has also "recognized that a scienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed." *Id*. at 499. Ultimately, "[a] successful facial challenge requires 'establish[ing] that no set of circumstances exists under which [the statute] would be valid, or that the statute lacks any plainly legitimate sweep.'" *Calzone v. Summers*, 909 F.3d 940, 950 (8th Cir. 2018) (alteration in original) (quoting *Phelps-Roper v. City of Manchester*, 697 F.3d 678, 685 (8th Cir. 2012)).

As the Court noted above, Plaintiffs challenge § 18-91 only on its face, but they alleged no facts that demonstrate §18-91 infringes on their,[18] or any other person's, First Amendment rights. Further, § 18-91 is a business regulation that imposes no criminal penalty for violations, and § 18-92 requires detailed, written notice to abate a nuisance before any enforcement action is taken. Thus, greater tolerance for vagueness, if any, is allowed. *Vill. of Hoffman Estates*, 455 U.S. at 498-99; *see also Powell v. Ryan*, 855 F.3d 899, 903 (8th Cir. 2015) ("Where potential sanctions are less severe, as in the case of civil penalties, due process requires less precision.") (citing *id*.).

Plaintiffs alleged that because "[t]he terms 'adverse effects,' 'health, peach [sic], or safety,' 'jeopardize,' 'endanger,' 'public health,' 'safety of persons,' 'incompatible,' 'adversely affecting,' 'livability,' and 'appropriate development,' are all undefined" they are unconstitutionally vague. Am. Compl. ¶ 170, ECF No. 54, Page ID 304. Yet "[m]athematical precision is not required in legislation[,]" *Farkas v. Miller*, 151 F.3d 900,

---

[18] Plaintiffs made cursory and conclusory allegations that § 18-91 violates the First Amendment broadly, but failed to support those allegations with any existing facts or realistic scenarios demonstrating such a violation. *See* Am. Compl. ¶ 178, ECF No. 54, Page ID 305.

905 (8th Cir. 1998), and terms which "'plainly require no guessing at their meaning' and are 'words of common understanding[,]'" are not unconstitutionally vague. *Weed*, 873 F.3d at 1030 (quoting *Cameron v. Johnson*, 390 U.S. 611, 616 (1968)). Thus, § 18-91 is not unconstitutionally vague on its face simply because the Omaha Municipal Code does not define each of the complained-of terms. Plaintiffs failed to allege or otherwise demonstrate that any one of these terms lacks a common understanding or requires guessing as to its meaning. *Id*. Accordingly, they have not stated a plausible vagueness claim under the Fourteenth Amendment's Due Process Clause, and the Court will dismiss the Eleventh Cause of Action, in its entirety, without prejudice.

### 6. Twelfth Cause of Action

In the Twelfth Cause of Action, Plaintiffs alleged the City Defendants retaliated against Plaintiffs for exercising their alleged First Amendment right to view and offer live nude dancing. *See generally*, *Jake's, Ltd., v. City of Coates*, 284 F.3d 884, 886 (8th Cir. 2002) (quoting *Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 565-66 (1991) ("Nude dancing is expressive conduct protected by the First Amendment, 'though . . . only marginally so.'"). They also alleged that the Nuisance Ordinance and the Bottle Club Ordinance "were not passed for any legitimate reason, but rather, because Defendants disapprove of the legal activities that occur inside Club Omaha." Am. Compl. ¶ 178, ECF No. 54, Page ID 305.

Plaintiffs' claim for retaliation is too conclusory to state a plausible claim. Other than alleging they suffered "retaliatory discrimination[,]" they failed to allege a retaliatory act taken by any of the City Defendants beyond enacting the ordinances at issue, and the defendant city councilmembers and mayor are entitled to absolute legislative immunity

for those actions.  *Bogan v. Scott-Harris*, 523 U.S. 44, 54-55 (1998) (stating "[l]ocal legislators are entitled to absolute immunity from § 1983 liability for their legislative activities[,]" and that "officials outside the legislative branch are entitled to legislative immunity when they perform legislative functions[,]" like "signing into law an ordinance") (citations omitted).

To the extent Plaintiffs intended to challenge the application of certain sections of Chapter 18 and Chapter 15, as amended by the Ordinances, under the First Amendment, their allegations are too conclusory to state a claim and too vague to give the City of Omaha adequate notice of a claim.  *Adams v. Am. Family Mut. Ins. Co.*, 813 F.3d 1151, 1154 (8th Cir. 2018) ("The pleading must provide the defendant with fair notice of what the plaintiff's claim is and the grounds upon which it rests.") (internal quotation omitted). Plaintiffs broadly alleged that all Defendants violated Plaintiffs' right to free expression and that the Ordinances were not passed for a legitimate purpose.  However, the Ordinances amended several sections of the Omaha Municipal Code to make existing laws applicable to certain kinds of businesses, and Plaintiffs did not allege which sections, subsections, or provisions violated the First Amendment.  Thus, these allegations are too vague and conclusory.  *See Adams*, 813 F.3d at 1154.

Plaintiffs' briefing provided no more clarity or notice than their allegations.  A claim that restrictions on nude dancing in certain venues violates the First Amendment is evaluated as a time-place-and-manner restriction, *see generally Jake's*, 284 F.3d at 886, but Plaintiffs made no mention of an impermissible time-place-and-manner restriction in their brief.  Pl.'s Br., ECF No. 61, Page ID 400-01.  Instead, they simply inserted a string

of block quotes from other court opinions and stated "Defendants engaged in unconstitutional retaliation[.]" *Id.*

Accordingly, Plaintiffs' Twelfth Cause of Action will be dismissed, without prejudice.

### 7. Thirteenth Cause of Action

The Thirteenth Cause of Action claims the Ordinances violate the Equal Protection Clause.

Because Plaintiffs alleged the City Defendants denied them "equal protection of the law by specifically targeting Mr. Harrington and Club Omaha for discriminatory treatement[,]" it appears their equal-protection claim is based on a class-of-one theory. Am. Compl. ¶ 181, ECF No. 54, Page ID 306; *see also Id.* at ¶ 183 (alleging that laws regulating bottle clubs were enacted "for the sole purpose of damaging Plaintiffs and closing Club Omaha").[19] Under a class-of-one theory, a plaintiff does "not allege membership in a class or group" but "that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Robbins v. Becker*, 794 F.3d 988, 995 (8th Cir. 2015) (quoting *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam)). Absent a showing that other similarly situated persons received preferential treatment, the plaintiff does not have a viable equal protection claim. *Id.* "To be similarly situated for purposes of a class-of-one equal-protection claim, the persons alleged to have been treated more favorably must

---

[19] Plaintiffs' opposition brief added no clarity as to whether their equal-protection claim was based on a class-of-one theory or a traditional theory because it failed to discuss this claim or provide any argument as to why it should not be dismissed.

be identical or directly comparable to the plaintiff in all material respects." *Id.* (quoting *Reget v. City of La Crosse*, 595 F.3d 691, 695 (7th Cir. 2010)).

Plaintiffs failed to allege the existence of a similarly situated person or business entity that was treated more favorably. The Amended Complaint identified two business entities outside Omaha which were allegedly similarly situated and received preferential treatment, Am. Compl. ¶¶ 185, 188, ECF No. 54, Page ID 306-07, but these entities are irrelevant to Plaintiffs' equal protection claim against the City of Omaha. It also identified two other business entities in Omaha which no longer operate, *Id.* at ¶¶ 186-87, but Plaintiffs failed to allege facts that sufficiently demonstrate these entities were similarly situated to Club Omaha. Plaintiffs merely allege that the City of Omaha allowed these entities to operate and engage in various illicit activities. *Id.* There are no allegations that another individual similarly situated to Harrington received preferential treatment from the City of Omaha. Plaintiffs have, therefore, failed to state a plausible equal-protection claim under a class-of-one theory.

Even under a traditional theory, Plaintiffs have not stated a plausible equal-protection claim. The alleged facts do not indicate that either Harrington or H&S Club Omaha are members of a suspect or quasi-suspect class, *see Gallagher v. City of Clayton*, 699 F.3d 1013, 1018 (8th Cir. 2012),[20] and where a law does not "involve[ ] a suspect or quasi-suspect classification, the law must only be rationally related to a legitimate government interest[,]" *id.* Such laws are "accorded a strong presumption of

---

[20] Plaintiffs' allegation that their members, employees, and dancers "are largely minorities and other protected class members" is not supported by any factual allegations. Therefore, it is conclusory and insufficient to merit heightened scrutiny.

validity[.]" *Id.* (quoting *Heller v. Doe*, 509 U.S. 312, 319-20 (1993)).  Further, it is the plaintiff's burden to "'negative every conceivable basis which might support' the [law]." *Id.* (quoting *Lehnhausen v. Lake Shore Auto Parts Co.*, 410 U.S. 356, 364 (1973)).  Based on the facts alleged in the Amended Complaint, the Court finds that Plaintiffs have failed to allege a plausible equal-protection claim under this standard.  *See Gallagher*, 699 F.3d at 1019-20.

Thus, Plaintiffs' Thirteenth Cause of Action, as asserted against the City Defendants, will be dismissed, without prejudice.

### 8.    Fourteenth Cause of Action

The Fourteenth Cause of Action claims § 15-42 of the Omaha Municipal Code, as amended by the Bottle Club Ordinance, violates the U.S. Constitution's Contracts Clause.

Article I, § 10, cl. 1 of the U.S. Constitution provides "[n]o State shall . . . pass any Law impairing the Obligation of Contracts . . . ."  "A three-part test determines whether state action violates the Contract Clause." *Hawkeye Commodity Promotions, Inc. v. Vilsack*, 486 F.3d 430, 436 (8th Cir. 2007); *see also Am. Fed'n of State, Cty. and Mun. Emps. v. City of Benton*, 513 F.3d 874, 879 (8th Cir. 2008)).  "The first question is whether the state law has, in fact, operated as a substantial impairment on pre-existing contractual relationships." *Vilsack*, 486 F.3d at 436 (quoting *Equip. Mfgs. Inst. V. Janklow*, 300 F.3d 842, 850 (8th Cir. 2002)).  There are three components to this first question: "whether there is a contractual relationship, whether a change in law impairs that contractual relationship, and whether the impairment is substantial." *Id.* (quoting *Gen. Motors Corp. v. Romein*, 503 U.S. 181, 186 (1992)).  The second question is "whether the state has a 'significant and legitimate public purpose behind the regulation." *Id.* (quoting *Janklow*,

300 F.3d at 850). The final question is "whether the adjustment of the 'rights and responsibilities of contracting parties [is based] upon reasonable conditions and [is] of a character appropriate to the public purpose justifying [the legislation's] adoption.'" *Id.* Accordingly, "not all laws affecting pre-existing contracts violate the [Contracts] Clause." *Sveen v. Melin*, __U.S.__, 138 S. Ct. 1815, 1821 (2018).

Plaintiffs alleged § 15-42 impairs H&S Club Omaha's existing lease contract and membership contracts. Although there are various apparent public purposes behind § 15-42, the City of Omaha has not offered a public purpose for this regulation and it is their burden to do so. *Vilsack*, 486 F.3d at 438. Thus, at this juncture, the Court need only determine whether Plaintiffs' have sufficiently alleged a substantial impairment of their contracts.

"[B]efore the Court can determine whether the impairment is substantial it must first identify what contractual rights, if any, have been impaired." *Janklow*, 300 F.3d at 851. This requires "identifying the precise contractual right [or obligation] that has been impaired . . . ." *Id.* (alteration added). Plaintiffs alleged that § 15-42's prohibition on nude dancing in bottle clubs impairs their rent obligation under their lease contract. They also alleged it impairs their obligation, under the membership contracts, to provide a private membership club which offers nude dancing and permits members to bring in their own alcohol for consumption. As the Court previously noted, § 15-42(f) permits, but does not require, the Omaha City Council to cancel, revoke, suspend, or recommend for non-renewal a bottle club license if the licensee allows any live person to appear in state of nudity on the licensed premises.

Whether an impairment is substantial "depends on 'the extent to which the [parties'] reasonable contract expectations have been disrupted[,]'" and "'[r]easonable expectations are affected by the regulated nature of an industry in which a party is contracting.'" *Vilsack*, 486 F.3d 437-38 (quoting *In re Workers' Comp. Refund*, 46 F.3d 813, 819 (8th Cir. 1995)). Thus, to "determin[e] the extent of the impairment, [courts must] determine whether the industry the complaining party has entered has been regulated in the past.'" *Id.* (quoting *Energy Reserves Grp. v. Kan. Power & Light Co.*, 459 U.S. 400, 411 (1983)).

The Court finds that Plaintiffs have not alleged an impairment that is substantial. The industries Plaintiffs entered—adult entertainment and alcohol consumption—have been regulated in the past, especially when coupled together, *see, e.g., Jake's, Ltd*, 284 F.3d at 886; *BZAPS, Inc. v. City of Mankato*, 268 F.3d 603, 607-08 (8th Cir. 2001), and the allegations in the Amended Complaint demonstrate Plaintiffs' understanding of the regulated nature of these industries, *see* Am. Compl., ¶ 2, ECF No. 54, Page ID 279. Before opening Club Omaha, Plaintiffs asked the Omaha City Attorney's office about the state and local regulations applicable to "sexually oriented business[es]" and about the need for a liquor license. *Id.* Further, the same regulation that Plaintiffs complain of— potential revocation, cancellation, or suspension of a liquor license if the licensee offers nude dancing—was applicable to retail licensees long before Club Omaha opened. Thus, Plaintiffs cannot reasonably claim they could not have foreseen that the same regulation may become applicable to establishments like Club Omaha which permit customers to bring in their own alcohol for consumption, *i.e.* bottle clubs. *See Holiday Inns Franchising, Inc. v. Branstad*, 29 F.3d 383, 385 (8th Cir. 1994) (explaining "that if the party to the

contract who is complaining could have seen it coming, it cannot claim that its expectations were disappointed").

Therefore, Plaintiffs have not alleged a plausible claim under the Contracts Clause, and the Court will dismiss the Fourteenth Cause of Action, as asserted against the City Defendants, without prejudice.[21]

### 9.　　Fifteenth Cause of Action

Plaintiffs' Fifteenth Cause of Action claims the Ordinances are unconstitutional bills of attainder.

The U.S Constitution provides "[n]o State shall . . . pass any Bill of Attainder." U.S. Const. art. I, § 10, cl. 1. A bill of attainder is

> a legislative Act which inflicts punishment on named individuals or members of an easily ascertainable group without a judicial trial. In determining whether a particular statute is a bill of attainder, the analysis necessarily requires an inquiry into whether the three definitional elements—specificity in identification, punishment, and lack of a judicial trial—are contained in the statute.

*Ambassador Books & Video, Inc. v. City of Little Rock*, 20 F.3d 858, 865 (8th Cir. 1994) (quoting *United States v. O'Brien*, 391 U.S. 367, 383 n.30 (1968)); *see also WMX Techs., Inc. v. Gasconade Cty.*, 105 F.3d 1195, 1201 (8th Cir. 1997).

The alleged facts do not satisfy the specificity-in-identification element. As the Court has noted, neither of the Ordinances created new regulations. They simply expanded their application by making existing nuisance and liquor-license regulations

---

[21] The Nebraska Constitution's Contracts Clause is nearly identical to the U.S. Constitution's Contracts Clause and the analyses of claims brought under both are substantially similar. *See The Lamar Co. v. City of Fremont*, 771 N.W.2d 894, 905 (Neb. 2009) (citing U.S. Const. art. I, § 10 and Neb. Const. art. I, § 16). Thus, to the extent the Amended Complaint claims § 15-42 violates the Nebraska Constitution's Contracts Clause, it is dismissed, without prejudice.

applicable to bottle clubs and other businesses where alcohol is consumed during live or video performances. Businesses holding a retail liquor license and engaged in the retail sale of alcoholic liquor were subject to these regulations prior to the enactment of the Ordinances, and the Ordinances do not reference Plaintiffs by name. Thus, "[r]ather than attaching to a specified organization[ ]" *WMX Techs.*, 105 F.3d at 1202, or individual, the regulations which Plaintiffs complain of apply to all retail licensees, bottle club licensees, and businesses "where alcoholic liquor is served or consumed while viewing either a live or video performance[,]" Omaha, NE, Municipal Code § 18-91(a). Therefore, Plaintiffs failed to allege a plausible bill-of-attainder claim, and the Court will dismiss the Fifteenth Cause of Action, as asserted against the City Defendants, without prejudice. *See WMX Techs.*, 105 F.3d at 1202 (finding an ordinance was not a bill of attainder because it did not "single out" the plaintiff for punishment).[22]

### 10. Sixteenth Cause of Action

Plaintiffs' Sixteenth Cause of Action claims a violation of the First Amendment's Establishment Clause, U.S. Const. amend. I.

Plaintiffs alleged that certain elected officials are religious, that Harrington is not, and that the Ordinances were passed based on the personal religious beliefs and objections of these elected officials. Such allegations fail to demonstrate how the Ordinances violate the Establishment Clause. *See Clayton ex rel. Clayton v. Place*, 884 F.2d 376, 380 (8th Cir. 1989) (explaining that laws which are otherwise neutral do not violate the Establishment Clause because they appear to be in "harmony with the

---

[22] This claim also fails under Neb. Const. art. I, § 16. *See In re A.M., Jr.*, 797 N.W.2d 233, 253 (Neb. 2011).

religious preferences of constituents or with the personal preferences of the officials taking action") (citing *Washington v. Davis*, 426 U.S. 229, 253 (1976)); *accord Green v. Haskell Cty. Bd. of Comm'rs*, 568 F.3d 784, 802 (10th Cir. 2009) (quoting *id.*).  Plaintiffs have, therefore, failed to allege a plausible claim under the First Amendment's Establishment Clause, and this claim will be dismissed without prejudice.

### B.    State-Law Claims

#### 1.    Fifth Cause of Action

Plaintiffs' Fifth Cause of Action is a claim for breach of contract and, alternatively, for promissory estoppel.

To state a claim for breach of contract, "the plaintiff must plead the existence of a promise, its breach, damages, and compliance with any conditions precedent that activate the defendant's duty."  *Kotrous v. Zerbe*, 846 N.W.2d 122, 126 (Neb. 2014).  With respect to the existence of a promise, Nebraska law "requires that the promisor intend to make a binding promise—a binding mutual understanding or 'meeting of the minds'[.]"  *Blinn v. Beatrice Cmty. Hosp. Health Ctr., Inc.*, 708 N.W.2d 235, 248 (Neb. 2006).  A claim for promissory estoppel, on the other hand, "may be based on an alleged promise that is insufficiently definite to form a contract, but upon which the promisee's reliance is reasonable and foreseeable."  *Id.*  "Recovery on a theory of promissory estoppel . . . is based upon the principle that injustice can be avoided only by enforcement of a promise."  *Pennfield Oil Co. v. Winstrom*, 720 N.W.2d 886, 902 (Neb. 2006).

Plaintiffs failed to allege the existence of a promise sufficiently definite to support a claim for breach of contract.  Ostensibly, Plaintiffs claim they entered into a contract

with the City of Omaha.[23]   On October 31, 2016, Defendant Kratz, the Omaha City Attorney, and Defendant Acosta Trejo, an Assistant City Attorney, responded, by email, to Plaintiffs' counsel's inquiries about zoning restrictions and licensing.  In that email, they responded, "there are no zoning regulations in Omaha in regards to 'sexually oriented business' as you put it" and, with respect to liquor licensing, explained the following:

> Omaha just follows state law, which says you don't need a license to provide alcohol to your 'guests' or to yourself.  So if members bought alcohol, took the alcohol to the club, stored it at the club, and only provided it to themselves and their guests (people who have not paid them for the drinks) and the club doesn't provide the alcohol in exchange for getting paid, then I think state law allows this without a license.  There's no need for an ordinance or anything local authorizing it.
>
> A license is needed if it's a place open to the general public or the club provides alcohol in exchange for payment.  If the payment (dues) are just for use of the premises, food, etc., and not for access to alcohol, then no license is required under state law or any city ordinances.

Am. Comp., ¶ 2, ECF No. 54, Page ID 279.  Plaintiffs alleged their "attorney and Omaha's attorneys Kratz and Acosta-Trejo reached a written agreement in 2016/2017, by way of emails, regarding the opening of a private membership sexually oriented business where members bring their own alcohol for consumption[,]"  *Id.* at ¶ 130, Page ID 296.  They also alleged that Kratz and Acosta-Trejo "gave Plaintiffs permission to open Club Omaha before Plaintiffs entered their 3-year lease . . . 'without a license.'"  *Id.* at ¶ 131, Page ID 295.  Even viewed favorably to the Plaintiffs, these and the other relevant allegations in

---

[23] The Court notes that it does not appear that either Kratz or Acosta-Trejo had the authority or capacity to enter into a contract on behalf of the City of Omaha.  *See* Neb. Rev. Stat. § 14-101 (providing that a city of the metropolitan class's power to contract "shall be exercised by the mayor and city council of such city except when otherwise specially provided"); Omaha, NE Municipal Code § 2-121 *et seq.* (providing the powers and duties of the city attorney); *City of Kearney v. Johnson*, 385 N.W.2d 427, 430-31 (Neb. 1986) (Krivosha, C.J., concurring) (stating no "city attorney, [ ] acting separately as an individual, can bind the city by a contractual obligation creatable only by official action of the city council").

the Amended Complaint do not suggest the existence of a sufficiently definite, binding promise to support a claim for breach of contract.

With respect to promissory estoppel, Plaintiffs failed to allege the existence of a promise, the enforcement of which is necessary to avoid an injustice. *Winstrom*, 720 N.W.2d at 902. Plaintiffs alleged they relied on Kratz and Acosta-Trejo's representations regarding state and local law when they leased the premises for, and began operating, Club Omaha. According to the Amended Complaint, however, these representations were made in 2016 and 2017 and the laws regulating bottle clubs were enacted in 2018. Kratz and Acosta-Trejo made no representations or promises to Plaintiffs or their counsel regarding future legislation, they only represented their present understanding of state and local law. To the extent Plaintiffs relied on those representations as a promise that they could operate Club Omaha in the manner they desired for the duration of their three-year lease notwithstanding any future legislation or regulations, no such promise was made and any reliance upon such a promise would be unreasonable. Thus, based on the allegations in the Amended Complaint, there is no promise to enforce and no injustice to avoid.

Plaintiffs' Fifth Cause of Action for breach of contract and, alternatively, for promissory estoppel will, therefore, be dismissed, without prejudice.

### 2. Twentieth Cause of Action

The Twentieth Cause of Action asserts claims for negligent hiring, training, and supervision, but Plaintiffs failed to allege a plausible negligence claim based on any of these theories. They made one conclusory allegation that various City Defendants "have been negligent in the hiring, training, and supervision of the [Omaha Police Department]

and [Omaha Building Department[,]" and that they failed to "train their officers . . . regarding civil rights[.]"  Am. Compl. ¶ 259, ECF No. 54, Page ID 314.  To hold the City of Omaha or its officers liable for alleged civil rights violations which resulted from a failure to adequately train or supervise, Plaintiffs' must satisfy the § 1983 standard for municipal and individual liability.  *See supra* Section II.A.  Because they have alleged no separate factual basis to support their state-law negligence theories, the Court will dismiss the Twentieth Cause of Action, as asserted against the City Defendants, without prejudice.[24]

**CONCLUSION**

The State Defendants' Motion to Dismiss and the City Defendants' Motion to Dismiss will be granted, and Plaintiffs' claims will be dismissed, under Rule 12(b)(1) and Rule 12(b)(6), in accordance with this Memorandum and Order.

IT IS ORDERED:

1.    The Amended Motion to Dismiss, ECF No. 57, filed by Defendants Michelle Bang, Colene Hinchy, Chris Jerram, Ken Kanger, Paul Kratz, Aimee Melton, Todd Schmaderer, Jean Stothert, William Acosta-Trejo, Fender, and the City of Omaha (collectively, the City Defendants), is granted as follows:

    a.    The First, Second, Fifth, Eighth, Ninth, Eleventh, Twelfth, Thirteenth, Fourteenth, Fifteenth, Sixteenth, and Twentieth Causes of Action, as asserted against the City Defendants in the Amended Complaint, are dismissed, without prejudice;

    b.    The Third Cause of Action, as asserted against the City Defendants in the Amended Complaint, is dismissed, with prejudice;

2.    The Motion to Dismiss, ECF No. 59, filed by Defendants Robert Batt, Carol Blood, John Bolduc, Patty Pansing Brooks, Brenda Konfrst, Doug Peterson, Pete Ricketts, Hobert Rupe, Susan Strong, and Theresa Thibodeau (collectively, the State Defendants), is granted as follows:

---

[24] Plaintiffs did not address their negligence claim in their opposition brief.

a. The Third, Fourth, Sixth, Seventh, Eighth, Ninth, Eighteenth, Nineteenth, and Twentieth Causes of Action, as asserted against the State Defendants in the Amended Complaint, are dismissed, without prejudice;

b. The Tenth, Twelfth, Thirteenth, Fourteenth, Fifteenth, Sixteenth, and Seventeenth Causes of Action, as asserted against the State Defendants in the Amended Complaint, and to the extent they claim violations of Nebraska state law, are dismissed, without prejudice; and

c. The Tenth, Twelfth, Thirteenth, Fourteenth, Fifteenth, Sixteenth, and Seventeenth Causes of Action, as asserted against the State Defendants in the Amended Complaint, and to the extent they claim violations of federal law, are dismissed, with prejudice.

3. Plaintiffs may, in good faith, seek leave to amend the Amended Complaint on or before February 11, 2019.

Dated this 29th day of January 2019.

BY THE COURT:

s/Laurie Smith Camp
Senior United States District Judge